**In the Matter of the Application of Carole DEFENDER for a Writ of Habeas Corpus, Petitioner and Appellee.**

**Loren Zephier, Respondent and Appellant.**

**No. 15945.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 11, 1988.

Decided Jan. 18, 1989.

Billy Joe Jones, Dakota Plains Legal Services, Fort Yates, N.D., for petitioner and appellee.

Charles B. Kornmann of Richardson, Groseclose, Kornmann, and Wyly, Aberdeen, for respondent and appellant.

MILLER, Justice.

In this child custody appeal we hold that (1) the circuit court properly refused to grant comity to a certain tribal court order, (2) the Indian Child Welfare Act does not apply to custody disputes between a child's natural parents, and (3) there was no abuse of discretion in awarding custody of the child to its mother.

## FACTS

The parties to this litigation are Indian. Appellant Loren Zephier (Father) is an enrolled member of the Cheyenne River Sioux Tribe. Appellee Carole DeFender (Mother) is enrolled in the Standing Rock Sioux Tribe. Their daughter, Danielle, is enrolled with the Cheyenne River Sioux Tribe. Danielle was born out of wedlock on February 4, 1982. At the time of Danielle's birth, Mother was living in Aberdeen, South Dakota, where she held a temporary position with the Bureau of Indian Affairs (BIA), and Father resided in Sioux Falls, South Dakota, where he worked for Minnehaha County. After Danielle's birth, Fa-

ther would travel frequently to Aberdeen to visit his daughter. Despite these visits, the parents were unable to agree on child support and visitation matters.

Mother's temporary position with the BIA ended in November 1983. She then moved to her parents' home in Kenel, South Dakota, which is located on the Standing Rock Sioux Indian Reservation. In August 1984 she began attending the University of North Dakota (UND), necessitating that she move her family to Grand Forks, North Dakota.[1] The record indicates that from November 1983 to April 1986 Father visited his daughter on only one occasion, when he had the child for approximately one month.

In June 1984 the circuit court in Minnehaha County ordered Father to pay $250 per month in child support for Danielle. He failed to comply with that order, resulting in two separate contempt proceedings. In June 1985 Father filed a petition for permanent custody of Danielle with the Cheyenne River Sioux Tribal Court. At that time, Father resided in Sioux Falls and Danielle and Mother were in Grand Forks. The record indicates that Mother was never properly served with a copy of that petition and that the tribal court did not act upon the petition at that time. However, Father ceased making child support payments from the time he filed the petition with the tribal court until September of 1986.

In March 1986 the Cheyenne River Sioux Tribal Court granted an ex parte temporary custody order which awarded Father temporary custody of Danielle. At that time, Mother and Danielle were still living in Grand Forks and Mother contends that she was never notified of any hearing to be held regarding that custody order.

In April 1986 Father traveled to Grand Forks. At that time the parties agreed that he could take Danielle with him, on the condition that she be returned to Mother in August. Mother contends that she was not aware of the temporary custody order entered by the tribal court.

In late April 1986 Mother received a letter from the Cheyenne River Sioux Tribal Court notifying her that a hearing on the permanent custody of Danielle would be held one week later. Mother telephoned the tribal court office and asked for a continuance of that hearing because of her pending final examinations at UND. Her request for a continuance was denied and the tribal court conducted the hearing in Mother's absence. The tribal court granted permanent custody to Father with visitation rights to Mother. It also vacated and forgave Father for all child support arrearages which had accrued under the circuit court's child support order.

Mother filed a motion for relief from the tribal court's custody order in May 1986 alleging that the tribal court lacked jurisdiction and that the service of process upon her was insufficient. That motion has yet to be ruled upon by the tribal court.

Meanwhile, Father attempted to utilize the tribal court custody order to vacate the circuit court's order regarding child support payments. In July 1986 the circuit court in Brown County held a hearing on a motion to show cause why Father should not be held in contempt for failing to pay his child support obligation. At the hearing, Father represented that the Cheyenne River Sioux Tribal Court had awarded custody of Danielle to him. The circuit court then suspended Father's payment of future child support to Mother pending final resolution of the custody issue. However, the circuit court did not forgive the past child support arrearages.

In August 1986 Mother filed a petition for a writ of habeas corpus with the circuit court in Brown County, requesting that the court award her custody of Danielle. The circuit court held that it would not grant comity to the earlier tribal court order and that it had jurisdiction over the habeas corpus petition. It further ordered alternating custody of Danielle between the parents pending a trial upon the merits of Mother's petition.

1. Mother has two older children born out of wedlock. Mother's fifteen-year-old son lives with her parents in Kenel. Astrid (a female child, age 12 at the time of the hearing) resides with Mother.

In April 1987 a trial to the court was held concerning Mother's habeas corpus petition. The circuit court, after hearing the testimony and reviewing the evidence, concluded that both Father and Mother were fit and capable parents. However, because, among other things, Danielle had lived most of her life with her mother and because she had a strong bond with her older half-sister, Astrid, the court found that Danielle's best interests would be served by awarding permanent custody to Mother with visitation rights granted to Father. The trial court's previous order regarding Father's payment of child support was also reinstated. Father appeals.

## DECISION

## I

### WHETHER THE TRIBAL COURT'S ORDER SHOULD HAVE BEEN RECOGNIZED BY COMITY.

■ Father contends that the order granting him custody of Danielle which was entered by the Cheyenne River Sioux Tribal Court was entitled to comity in the circuit court proceeding held in Brown County. As we noted in *State ex rel Joseph v. Redwing*, 429 N.W.2d 49 (S.D.1988), a party seeking recognition of a tribal court order under the principle of comity must establish the mandatory requisites of SDCL 1–1–25 by clear and convincing evidence. Under SDCL 1–1–25, the party must establish that (1) the tribal court had jurisdiction over both the subject matter and the parties; (2) the order or judgment was not fraudulently obtained; (3) the order or judgment was obtained by a process that assures the requisite of an impartial administration of justice, including but not limited to due notice and a hearing; (4) the order or judgment complies with the laws of the jurisdiction in which it was obtained; and (5) the order or judgment does not contravene the public policy of the State of South Dakota. *See also Hilton v. Guyot,*

159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895); *Mexican v. Circle Bear*, 370 N.W. 2d 737 (S.D.1985). It is clear, for the reasons stated below, that Father has failed to meet his burden and that the circuit court did not abuse its discretion in refusing to grant comity to the tribal court order.

■ First, the tribal court did not properly have jurisdiction over Mother. In order to exercise jurisdiction over a nonresident, the forum court must act in compliance with the requirements of due process. Both components of due process—notice and minimum contacts—must be satisfied before a court may properly exercise personal jurisdiction over a party. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[2] The standard set forth for determining whether the assertion of jurisdiction comports with due process was summarized by the United States Supreme Court as follows:

> The existence of personal jurisdiction ... depends upon the presence of reasonable notice to the defendant that an action has been brought ... and a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum.

*Kulko v. Superior Court*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132, 141 (1978) (citations omitted). Here, the record indicates that Mother was never properly served with either a copy of Father's petition for permanent custody of Danielle or a copy of the tribal court's temporary custody order. Further, the record shows that Mother received only a bare summons (served by certified mail) to appear in the Tribal Court for a hearing on who would receive permanent custody of Danielle *and* that Mother has never had any contacts with the Cheyenne River Sioux Reservation. As a result, we conclude that Mother did not have sufficient contacts with the Cheyenne River Sioux Tribe so as to render her amenable to its personal jurisdiction.

**2.** Although *International Shoe* did not involve a claim of jurisdiction by a tribal court, the same due process standard is applicable to tribal courts due to incorporation of the Due Process Clause in the Indian Civil Rights Act. *See* 25 U.S.C. § 1302(8); *see also Loncassion v. Leekity,* 334 F.Supp. 370 (D.N.M.1971).

*Kulko, supra; International Shoe, supra.* Moreover, we do not believe that Mother did anything so as to purposely avail herself of the privilege of conducting activities within the Cheyenne River Sioux Indian Reservation so as to render herself subject to personal jurisdiction by Tribal Court. *See Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Finally, we must note that the actions of Father alone are insufficient for the tribe to take jurisdiction over Mother.[3] "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Kulko,* 436 U.S. at 93–94, 98 S.Ct. at 1698, 56 L.Ed.2d at 142, *quoting Hanson, supra.*

We note that the tribe's own Law and Order Code fails to provide for jurisdiction in this instance. Its preamble makes no reference to the Code's applicability to off-reservation Indians. Its provisions for the assumption of jurisdiction by the tribe also do not appear to apply. T.C. § 1–4–1 applies only to those Indians living within the territorial jurisdiction of the reservation. T.C. § 1–4–2 extends the tribe's jurisdiction to the exterior boundaries of the reservation and upon certain Indian trust lands. T.C. § 1–4–3 extends personal jurisdiction only in the case where one has had sufficient contact with the reservation, e.g., living on the reservation, transacting business or owning property thereon, or tortious or criminal activity within the reservation.

■ The tribe's Juvenile Code also does not appear to grant jurisdiction. T.C. § 5–3–1 applies only to Indians found upon the reservation and only in certain enumerated circumstances. The tribal court attempted to exercise jurisdiction under one such circumstance, namely that Danielle was neglected or dependent, pursuant to T.C. § 5–3–1(2). However, Danielle's absence from the reservation rendered such exercise a nullity.

■ Further, because the tribe could not assume jurisdiction over Danielle under its Juvenile Code, its attempt to exercise jurisdiction over Mother pursuant to T.C. § 5–8–2, which extends jurisdiction to certain adults who are necessary for a juvenile adjudication, is likewise a nullity. Thus, the tribal court's failure to gain personal jurisdiction over Mother precludes the circuit court from extending comity to the tribal court's order.[4]

## II

## WHETHER THE CIRCUIT COURT LACKED JURISDICTION DUE TO THE INDIAN CHILD WELFARE ACT.

■ Father next contends that the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. § 1901 et seq., prohibited the circuit court from exercising jurisdiction over this issue. We disagree. The ICWA applies only to child custody proceedings. As defined by the Act, a child custody proceeding may be either a foster care placement, termination of parental rights, preadoptive placement or adoptive placement. *See* 25 U.S.C. § 1903(1). Here, the placement of Danielle with either of her natural parents does not fit within the definition of a custody proceeding and thus does not implicate the ICWA. This is clarified in the guidelines published by the Bureau of Indian Affairs which provide that: "Child custody disputes arising in the context of divorce or separation proceedings *or other similar domestic relations proceedings are not covered by the Act so long as custody is awarded to one of the parents.*" *See*

---

3. It should be observed, too, that Father's contacts with his tribe were quite minimal. He lived on the reservation from age 4 to 13, during a time his father worked for the BIA. He has not resided there for several years. None of his family, including his parents and various siblings, reside there.

4. While we are able to dispose of the comity issue solely on the basis of the tribe's lack of personal jurisdiction (SDCL 1–1–25(1)(a)), we also believe that it lacked subject matter jurisdiction under SDCL 1–1–25(1)(a) (see Issue II, infra), and that the tribal court's order was not obtained by due process because of the lack of sufficient notice given to Mother relative to the temporary and permanent custody hearings (SDCL 1–1–25(1)(c)).

Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,584, 67,587 (1979).[5]

■ Because the ICWA does not apply in this particular circumstance, we must resort to the traditional jurisdictional test set forth in *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). Under *Williams*, we must determine whether the exercise of state jurisdiction infringes upon the right of reservation Indians to make their own laws and be governed by them. *Id.* Further, we must be guided by the United States Supreme Court's admonition that tribal courts have been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); *see also National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). We also recognize that tribal courts play a vital role in the area of custody of Indian children. *See Matter of Guardianship of D.L.L. & C.L.L.*, 291 N.W.2d 278 (S.D.1980). However, absent the applicability of the ICWA, we do not believe that these principles may be extended so as to grant tribal courts the exclusive authority to adjudicate disputes which involve Indian children when neither the child nor the parents reside on the reservation. Thus, the circuit court did not abuse its discretion in exercising state jurisdiction over this issue.

### III

### WHETHER THE CIRCUIT COURT ERRED IN AWARDING CUSTODY OF DANIELLE TO MOTHER.

■ Having determined that the circuit court properly exercised jurisdiction over this matter, we turn to the issue of whether it erred in awarding custody of Danielle to Mother. Again, our standard of review is whether the circuit court abused its discretion in making its determination. *See Kolb v. Kolb*, 324 N.W.2d 279 (S.D.1982). The evidence adduced by the circuit court was that each parent was equally fit to be the primary custodian of Danielle. The court noted, however, that Danielle had lived most of her life with Mother and had become attached to her older half-sister. While Father and Mother each volleyed allegations of abuse and neglect of Danielle against each other, none of the allegations were substantiated so as to necessitate the removal of Danielle from either parent's custody.

Reviewing the circuit court's decision in its entirety, we do not believe that it abused its discretion in finding that Danielle's best interests would be served by placing her in the primary custody of Mother with liberal visitation granted to Father.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

WUEST, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

In concurring in result, the minority viewpoint in *Redwing* is cited and its thesis is incorporated hereby. However, this author believes that he can concur in result because *Redwing* and this case are totally distinguishable. As I write, the Clerk of the United States Supreme Court has advised the Clerk of this Court that a petition for certiorari concerning the *Redwing* decision has been filed with the Highest Court in this Nation. So—*Redwing* is a final decision in this Court, but we await to see if it is a final decision in this Nation.

---

5. It should be noted that the BIA did not promulgate their guidelines for state courts in Indian child custody proceedings as regulations because they were not intended to have binding legislative effect. However, the guidelines do represent the Department of Interior's interpretation of certain provisions of the ICWA in order to assure that the rights guaranteed by the ICWA are protected when state courts decide Indian child custody matters. *See* Guidelines for State Courts, *supra* at 67,584.

*Redwing* involved an attempt to enforce child support provisions of an earlier, invalid, State court paternity proceeding. There, the State court had conducted its paternity proceeding although it lacked subject-matter jurisdiction. *See Redwing,* 429 N.W.2d 49, 52–59 (Henderson, J., dissenting). In *Redwing,* the tribal court had jurisdiction from beginning to end, which is 100% opposite to the present case. Unlike the mother in *Redwing,* who turned to the State court because she was dissatisfied with tribal proceedings, the father in this case went forum-shopping in the tribal court after adverse rulings in the State court.

An examination of the current factual pattern and case history does not present the same threat, from the State of South Dakota, to tribal courts as that exhibited in *Redwing.* Reason: The notice provided to Carole of the tribal proceeding was deficient, thus depriving the tribal court of personal jurisdiction. Obviously, she was entitled to Due Process notice.

However, I cannot agree with the majority that subject-matter jurisdiction was lacking. Title 5, Sec. 5–3–1(6), provides that the tribal juvenile court has jurisdiction over all proceedings concerning custody over a "child." "Child," as defined in Title 5, Sec. 5–1–2(3), is an enrolled member of the Cheyenne River Sioux Tribe, *or* any other Indian on the reservation, under the age of eighteen. The Tribal Code does not limit its subject-matter jurisdiction regarding its enrolled members by reference to a map. It appears that the moving hand of the Highest Court of this State is hemming in tribal control of Indian children by the geographical boundary of the reservation. I believe this is wrong. It destroys the efficacy of the tribal courts and undermines Federal policy as established by the United States Congress. *See Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); *Fisher v. District Court,* 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976).

The anomalous nature of tribal jurisdiction is such that tribal government can control questions of domestic relations of tribal members off the reservation, as this Court noted in *In re Guardianship of D.L. L. & C.L.L.,* 291 N.W.2d 278, 281 (S.D. 1980). Obviously, the tribal court's reach is not, necessarily, so narrowly circumscribed as the majority opinion would have it.