John C. HARRIS, Appellee,

v.

Charlene K. YOUNG, formerly Charlene K. Harris, Appellant.

No. 17237.

Supreme Court of South Dakota.

Argued March 20, 1991.

Decided July 3, 1991.

142

Curtis W. Hanks, Lemmon, for appellee.

Eric J. Antoine, Dakota Plains Legal Services, Mission, for appellant.

SABERS, Justice.

Indian mother living on reservation with her three children challenges the subject matter jurisdiction of state circuit court to modify the child custody provisions of a Wyoming divorce decree.

*Facts*

Young (mother) and Harris (father) were divorced by a Wyoming state court in 1981. Mother is an enrolled member of the Cheyenne River Sioux Tribe (tribe). Father is not an enrolled member of tribe and is apparently non-Indian.

The Wyoming divorce decree gave mother custody of the couple's three daughters: Bernice (b. 1974), Misty (b. 1976) and Sabrina (b. 1978). Prior to the divorce, mother and daughters moved to the town of Isabel in Dewey County, South Dakota. Isabel is within the boundaries of the Cheyenne River Indian Reservation (reservation). Daughters Bernice and Misty, like mother, have at all relevant times been enrolled members of tribe. Sabrina is not an enrolled member although her parentage is identical to that of Bernice and Misty and

mother claims she is eligible for tribal enrollment.[1]

Later in 1981, mother petitioned circuit court in Dewey County to modify the custody and visitation provisions of the Wyoming divorce decree, alleging that father abused and mistreated the three daughters during summer visitation. The court issued a temporary restraining order enjoining father from exercising his visitation rights at Christmas, 1981.

In 1988, father moved near the town of Meadow in Perkins County, South Dakota. Perkins County is not within the boundaries of any Indian reservation. Sabrina spent Thanksgiving, 1988 with father. Afterwards, she refused to return to mother allegedly because of the environment of alcohol abuse and exposure to sexual misconduct.

On January 12, 1989, father petitioned circuit court in Dewey County to modify the 1981 Wyoming divorce decree and award him custody of all three daughters. Father's petition alleged that mother was often drunk, that Sabrina had seen mother having sex with three different men and that her sister had been sexually abused by mother's boyfriend.

On April 20, 1989, mother moved to dismiss father's petition, arguing that subject matter jurisdiction lies exclusively in tribal court. Following a hearing on mother's motion to dismiss held May 1, 1989, the court denied the motion to dismiss and ordered the 1981 Wyoming divorce decree modified to award custody of Sabrina to father. The court entered findings of fact and conclusions of law on October 16, 1989.

1. Whether Sabrina is eligible for enrollment in tribe is a significant factor in determining the relative weight of Indian and non-Indian interests in this case. Yet this court cannot determine whether she is eligible or not due to the inadequate record and briefing of the issue on the part of both parties' attorneys. Apparently the Constitution of the Cheyenne River Sioux Tribe originally set no minimum tribal blood quantum for enrollment eligibility. Tribe subsequently amended its Constitution to require a ¼ tribal blood quantum for persons born after the effective date of the amendment to qualify for enrollment, but the Constitution does not state on its face when the amendment took effect. See CRST Const. Art. II. Father's counsel claimed at oral argument that the tribal blood quantum of the three daughters is considerably less than ¼ and that the constitutional amendment making ¼ the minimum quantum for enrollment took effect between the birth dates of Misty and Sabrina. If these assertions are true, then Sabrina cannot become a tribal member even though her mother and sisters are already members. The problem is that nothing in the record or the briefs supports, refutes or is even relevant to either assertion.

Mother appeals and argues that the court erred in:

(1) Finding that mother and daughter reside outside the boundaries of reservation;

(2) Applying the Uniform Child Custody Jurisdiction Act to the proceedings;

(3) Applying the Indian Child Welfare Act to the proceedings; and

(4) Concluding that it had subject matter jurisdiction.

### 1. *Reservation Boundaries*

The court found that the home of mother and daughters in Isabel is "within the original exterior boundaries of the Cheyenne River Indian Reservation, but outside of the diminished reservation."

This finding is clearly erroneous. The United States Supreme Court has ruled that the Cheyenne River Indian Reservation was never diminished. *Solem v. Bartlett*, 465 U.S. 463, 481, 104 S.Ct. 1161, 1171, 79 L.Ed.2d 443 (1984). Beyond doubt, Isabel is within reservation boundaries and is "Indian country" within the meaning of 18 U.S.C. § 1151 (1988).

### 2. *Uniform Child Custody Jurisdiction Act*

The court concluded that it had "jurisdiction of the subject matter ... based on the factors contained in SDCL 26–5A–3 et seq....." This, too, is error for two reasons.

First, SDCL 26–5A–3 does not confer subject matter jurisdiction on any court. Chapter 26–5A is South Dakota's enactment of the Uniform Child Custody Jurisdiction Act (UCCJA). It merely sets forth the nexus which is sufficient for a court in this state to assume *personal* jurisdiction over a child custody case when relevant parties are in another state. In addressing itself to any "court of this state *which is competent to decide* child custody matters," the UCCJA assumes, but does not create, subject matter jurisdiction. SDCL 26–5A–3 (emphasis added).

Normally, any circuit court in South Dakota is "competent to decide" child custody matters. *See* SDCL 25–4–45. In this case,

the question is whether the circuit court has subject matter jurisdiction over child custody matters where the children and one parent are Indians domiciled on a federally recognized reservation. The UCCJA provides no guidance in answering this question.

The second problem with reliance on the UCCJA in a custody matter where necessary parties are domiciled on a reservation is that the UCCJA speaks only of "states." An Indian reservation is not a "state" within the meaning of the UCCJA. SDCL 26–5A–2(10). Therefore, even for its intended limited purpose of establishing personal jurisdiction, the UCCJA has no application where parties reside not between different states but between reservation and non-reservation areas within the same state.

We conclude that to the extent the trial court based its finding of subject matter jurisdiction on SDCL 26–5A–3, the finding must be rejected.

### 3. *Indian Child Welfare Act*

Mother claims the court erred in applying the provisions of the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901–1963 (1988), to the facts of this case. Although ICWA has no application in this case because the placement of a child with a parent in connection with a divorce decree is not a "child custody proceeding" within the meaning of ICWA, 25 U.S.C. § 1903(1); *Application of Defender*, 435 N.W.2d 717, 721–722 (S.D.1989), there is no basis for mother's claim. The court's findings of fact and conclusions of law do not mention ICWA, much less apply its provisions to this case. Therefore, we find no error in this regard.

### 4. *Subject Matter Jurisdiction*

Mother and her three daughters live on reservation. Mother and two of her daughters are enrolled members of tribe and the third daughter is allegedly eligible for enrollment. We must decide whether, under these circumstances, the circuit court had subject matter jurisdiction of the petition of the non-Indian, off-reservation father to

modify custody provisions based on a change in circumstances which occurred on reservation.[2]

> [W]e must resort to the traditional jurisdictional test set forth in *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). Under *Williams*, we must determine whether the exercise of state jurisdiction infringes upon the right of reservation Indians to make their own laws and be governed by them. *Id.* Further, we must be guided by the United States Supreme Court's admonition that tribal courts have been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.[2d] 106 (1978). . . . We also recognize that tribal courts play a vital role in the area of custody of Indian children. *See Matter of Guardianship of D.L.L. and C.L.L.*, 291 N.W.2d 278 (S.D.1980).

*Application of Defender*, 435 N.W.2d at 722 (citations omitted).

■ The state of South Dakota has no general civil jurisdiction over Indians on reservations within its borders. *State v. Spotted Horse*, 462 N.W.2d 463, 467 (S.D.1990); *Rosebud Sioux Tribe v. South Dakota*, 900 F.2d 1164, 1167 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2009, 114 L.Ed.2d 98 (1991). Clearly, if this were a custody dispute between two enrolled members of tribe *domiciled* on reservation, the subject matter jurisdiction of the tribal court would be exclusive. *Fisher v. Dist. Court of Sixteenth Jud. Dist.*, 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976); *see also Wells v. Wells*, 451 N.W.2d 402 (S.D.1990).

In contrast, when one parent is a non-Indian domiciled off-reservation who petitions the state court for relief to which any state citizen is entitled, the *Williams* infringement test becomes a closer question. We note initially that mother fails to point out any specific ways in which the exercise of state jurisdiction under these circumstances would infringe on the right of reservation Indians to make their own laws and be governed by them.

In a similar case, the North Dakota Supreme Court ruled that a state court lacks subject matter jurisdiction over the child custody modification motion of the off-reservation father where the mother and child were domiciled on the reservation. *Malaterre v. Malaterre*, 293 N.W.2d 139 (N.D.1980). *Malaterre* is distinguishable because the father, although living off-reservation, was an enrolled member of the same tribe to which mother and child belonged. Following *Malaterre, Byzewski v. Byzewski*, 429 N.W.2d 394 (N.D.1988), held that the state court lacked subject matter jurisdiction over custody and support matters in a divorce action brought by an off-reservation, non-Indian husband against his reservation Indian wife. *Byzewski*, too, can be distinguished from the present case because there the husband lived continuously on the reservation with his wife for nearly three years, and only left the reservation after the wife began divorce proceedings in tribal court. The husband filed for divorce in state court approximately one day after moving off the reservation.

*In Matter of Guardianship of Flyinghorse*, 456 N.W.2d 567 (S.D.1990), this court recently held that a state court lacked subject matter jurisdiction over the petition of the Veterans Administration to assume guardianship of a reservation Indian, and that under the *Williams v. Lee* infringement test, the tribal court had exclusive jurisdiction. *See also Matter of Guardianship of Sasse*, 363 N.W.2d 209 (S.D.1985). However, the Flyinghorse guardianship petition, even though filed by

---

**2.** Since a determination of whether state court jurisdiction infringes on tribal sovereignty depends in part on a weighing of all relevant factual circumstances, it would be helpful to have some background on the parties and their marriage. Instead, the briefs and the record barely mention that father is non-Indian, a crit- ical factor. They provide no information whatever on where mother and father were married, where daughters were born, whether father had ever been domiciled on reservation, and whether mother had ever been domiciled on reservation prior to moving there in 1980.

a non-Indian party, a federal agency, implicated no interests outside the reservation and involved no parties other than "Indians residing on the reservation." *Flyinghorse*, 456 N.W.2d at 568. The case is far different where, as here, a non-Indian, off-reservation party domiciled in South Dakota brings an adversary proceeding against a reservation Indian in state court.

On balance, we believe *Wells v. Wells*, *supra*, although not cited by either party, is the key South Dakota precedent for deciding the present case. In *Wells*, an off-reservation Indian wife brought a divorce action in state court against her reservation Indian husband. We held that the state and tribal courts had concurrent subject matter jurisdiction over the cause of action. Under concurrent jurisdiction, the case could be adjudicated by whichever court system first obtained valid personal jurisdiction over the parties, and there was no impermissible interference with the sovereignty of the tribe.

> Once [wife] left the reservation and took up residence in Rapid City, the state acquired an interest in the marriage of [wife] and [husband], and their divorce can no longer be characterized exclusively as a "reservation matter." ... The ... tribe is not denied the ability to enact its own laws governing divorce and to enforce those laws in its own courts.... [T]he state court is merely exercising its own concurrent jurisdiction over the marriage of one of its domiciliaries.... Just as South Dakota does not retain exclusive jurisdiction over the marriage of South Dakota citizens who leave the state, the tribe does not retain exclusive jurisdiction over the marriage of its members who leave the reservation.

*Id.* at 405. Cf. *Byzewski* and other cases cited and distinguished in *Wells, supra*, at 406.

■ Concurrent subject matter jurisdiction in divorce-related litigation between an Indian party domiciled on a reservation and a party domiciled elsewhere in South Dakota is even more compelling in this case than in *Wells* because this father is not an enrolled member of tribe and apparently was not domiciled on reservation anytime within the past ten years, if ever. Moreover, Sabrina is not an enrolled member of tribe either, and it is possible she may not be eligible for enrollment, see footnote 1.

A further consideration underscoring the need for concurrent state and tribal subject matter jurisdiction in this case is that "the Cheyenne River Sioux Tribe's By–Laws expressly state that the Cheyenne River Sioux Tribal Courts shall not have jurisdiction over disputes involving Indian and non-Indian parties unless both parties stipulate to such jurisdiction. Cheyenne River Sioux Tribe By–Laws Art. V § 1(c) (1935)." Pommersheim, *South Dakota Tribal Court Handbook*, 12–13 (1988). In other words, if the tribal court had exclusive jurisdiction over this cause of action, mother could deny father all relief simply by refusing to stipulate to the tribal court's personal jurisdiction.[3] Therefore, concurrent jurisdiction

---

**3.** Cheyenne River Sioux Tribe By–Laws Art. V. § 1(c) provides in part that tribal court "shall have jurisdiction over ... disputes or lawsuits ... between Indians and non-Indians where such cases are brought before it by stipulation of both parties[.]" Whether this provision remains good law is questionable. It has been subject to scathing criticism by tribe's high court in *Becker County, Mn. Welfare Dept. v. Mestes*, Mem.Op. (CRST Ct.App. Sept. 22, 1989), and *Thorstenson v. Cudmore*, Mem.Op. (CRST Ct.App. Feb. 15, 1991). In its detailed analysis in *Thorstenson*, the court refers to the stipulated jurisdiction provision as a legal "oddity" inserted into the 1935 By–Laws by the BIA either through oversight or political trepidation and not reflective of either the congressional mandate embodied in the Indian Reorganization Act of 1934, at 25 U.S.C. § 476 (1988), or of "any

considered decision of the Cheyenne River Sioux people." *Thorstenson, supra*, at 10–11. The court goes on to point out the negative public policy and due process consequences of literally applying a by-law which, in the case of disputes between Indians and non-Indians, "effectively place[s] the opportunity to pursue remedial redress in the hands of the alleged 'wrongdoer.'" *Id.* at 15. Thus it is possible that father might have successfully brought an action to modify the divorce decree in tribal court whether mother stipulated to jurisdiction or not.

Nevertheless, we cannot say with certainty that father could have brought his action as of right. The stipulated jurisdiction provision in the By–Laws remains on the books. The tribal court's criticism of the provision in *Becker County* and *Thorstenson* is ultimately dicta:

not only passes the *Williams v. Lee* infringement test but is compelled by specific provisions of the tribe's own By–Laws.

A final factor supporting concurrent subject matter jurisdiction is that mother herself used the state court system in 1981 to temporarily restrain father from exercising his visitation rights under the Wyoming divorce decree. We generally recognize that "subject matter jurisdiction can neither be conferred on a court, nor denied to a court by the acts of the parties or the procedures they employ." *Application of Koch Exploration Co.*, 387 N.W.2d 530, 536 (S.D.1986) (citing *In re Marriage of Helm*, 271 N.W.2d 725, 727 (Ia.1978)). Nevertheless, while not dispositive on the question of subject matter jurisdiction, mother's previous use of the state court system to the same end father now pursues is a factor supporting our conclusion that tribal sovereignty will not be infringed by concurrent jurisdiction permitting father to do no more than what has already been done by mother. We note further that mother's attempt to deny father the same relief she has already claimed appears opportunistic, self-serving and it is poorly received. For all of the above reasons, we affirm the trial court's conclusion that it had subject matter jurisdiction.

> *Becker County* found jurisdiction present without stipulation because the real parties in interest were both tribal members, one of whom merely assigned her cause of action to a non-Indian entity, and *Thorstenson* reached the same result by finding that the written contracts which were the subject of the dispute between the Indian and non-Indian parties, both domiciled on reservation, supplied the required stipulation to jurisdiction.
>
> The tribe's codified law also reflects the tribe's desire to get beyond the narrow confines of the stipulated jurisdiction provision in the By–Laws:
>
>> It is hereby declared as a matter of Tribal policy ... that the Tribe provide itself, its members, and other persons living within the territorial jurisdiction of the Tribe ... with an effective means of redress in ... civil ... cases against members and non-Tribal members who through either their residence, presence, business dealings, other actions or failures to act, or other significant minimum contacts with this Reservation ... incur civil obligations to persons or entities entitled to the Tribe's protection.

### 5. *Failure to Cite Supporting Authority*

■ Mother, as appellant,[4] cites SDCL § 15–26A–60(6) and *Mielitz v. Schmieg*, 461 N.W.2d 763 (S.D.1990), for the proposition that father's failure to cite authority in support of three of his arguments constitutes waiver.

SDCL 15–26A–60(6) provides in part: "The brief of the *appellant* shall contain ... citations to the authorities relied on." (Emphasis added). In *Mielitz v. Schmieg*, 461 N.W.2d at 764, this court held that an appellee who failed to support his notice of review with argument and authority waived the issue.

Although SDCL 15–26A–61 provides that the brief of appellee shall conform to SDCL 15–26A–60, the rule requiring supporting authority is addressed primarily to those who raise issues, not to those who respond to them. Here, father is appellee and has filed no notice of review. Father stands by the judgment of the circuit court. While it is no doubt poor strategy for an appellee to respond to appellant's argument without citing supporting authority, just as it is generally poor strategy for an appellant not to file a reply brief, it is the party who *raises* an issue and then fails to support it with authority who will be deemed to have waived the issue.

> CRST Law and Order Code 1–4–1. Even so, the benefit of this statute appears limited to tribe, its members and non-members residing on reservation—to the exclusion of this father.
>
> We note again that neither counsel directed the trial court's attention to this critically important stipulated jurisdiction provision in tribe's By–Laws, nor briefed nor researched same for this court.

**4.** Although it is necessary in this section to refer to the parties as "appellant" and "appellee," we are aware of SDCL 15–26A–63, which pertains to references to parties in briefs and arguments by counsel, and provides:

> In their briefs and oral arguments counsel should minimize references to parties by such designations as "appellant" and "appellee." It promotes clarity to use the designations used in the trial court, or the actual names of the parties, or descriptive terms such as "employer," "owner," "guest," "injured person," "husband," etc.

For purpose of clarity, we continue to urge compliance with this statute by all counsel.

In summary, we reverse the trial court's finding that the Cheyenne River Indian Reservation has been diminished and its conclusion that its subject matter jurisdiction was based in part on the Uniform Child Custody Jurisdiction Act. However, we affirm the trial court's conclusion that it had subject matter jurisdiction and further hold that the state court's subject matter jurisdiction is concurrent with that of the tribal court.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part, dissenting in part).

## ISSUE I

I concur.

## ISSUE II

I specially concur. Essentially, an Indian tribe is not a state within the meaning of the Uniform Child Custody Jurisdiction Act (UCCJA). As held by the case of *Malaterre v. Malaterre*, 293 N.W.2d 139, 144 (N.D.1980), the UCCJA pertains to situations where there are jurisdictional disputes with sister states. Here, the child and mother live within South Dakota but reside on the Cheyenne Indian Reservation and therefore come within the purview of the federal Act of August 15, 1953, 67 Stat. 558, now codified at 18 U.S.C. § 1162. South Dakota has never effectively assumed general civil jurisdiction over Indian Reservations under P.L. 280. *Rosebud Sioux Tribe v. State of South Dakota*, 900 F.2d 1164, 1171 (8th Cir.1990).

## ISSUE III

I specially concur. It appears the circuit court decided that the Indian Child Welfare Act applied to the proceedings upon which it adjudicated. Not so. ICWA provides, inter alia, that it has no application to an "award, in a divorce proceeding, of custody to one of the parents." 25 U.S.C. § 1903(1). Therefore, the trial court's deci-sion on this point of law could not be based upon the Cheyenne River Sioux Tribe's failure to intervene or request a transfer. Settled law: *Application of Defender*, 435 N.W.2d 717, 721 (S.D.1989).

## ISSUE IV

I dissent. This case should be reversed and remanded due to the dearth of salient facts as reflected by footnotes 1 and 2 of the majority opinion. As the facts go, so goes the applicable law. Additionally, mother and three daughters appear to be Indians, (mother and two daughters are enrolled members of the tribe and the third daughter appears to be eligible for enrollment), residing on the reservation, and all the circumstances supposedly justifying a change in custody occurred within the exterior boundaries of the Cheyenne River Indian Reservation. Thus, the action taken by the circuit court appears to infringe upon the right of the Cheyenne River Sioux Tribe to decide where Indian children should live. Where circumstances concerning the internal affairs of Indians residing on the reservation occur on the reservation, state court authority has consistently been held to be invalid. *Matter of Guardianship of Sasse*, 363 N.W.2d 209, 211 (S.D.1985); *Matter of Guardianship of D.L.L. & C.L.L.*, 291 N.W.2d 278, 281 (S.D.1980).

Recently, our sister state of North Dakota recognized exclusive tribal jurisdiction in domestic matters involving resident Indians. *Byzewski v. Byzewski*, 429 N.W.2d 394, 399 (N.D.1988). South Dakota has never effectively assumed general civil jurisdiction over Indian reservations under P.L. 280. *Rosebud Sioux Tribe v. State of South Dakota*, 900 F.2d 1164, 1171 (8th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2009, 114 L.Ed.2d 98 (1991). *See State v. Spotted Horse*, 462 N.W.2d 463 (S.D.1991). The Eighth Circuit Court of Appeals stated: "We believe that the failure to assume jurisdiction in a manner consistent with the purposes of P.L. 280 is *not* sufficient action within the terms of the offer made by Congress to the States in 1953." *Rosebud*, at 1171.

Here, the trial court's action was preempted by federal law. Once it is determined that a particular matter has been preempted by federal law, any state action taken is a nullity and therefore void. *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 143, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665, 672 (1980).

In *Byzewski,* the North Dakota Supreme Court recognized that domestic relations among its members is an important issue of tribal control and does not dissipate merely because one of the parties to a marriage is a non-Indian. 429 N.W.2d at 399. See also the United States Supreme Court ruling in *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987), holding, inter alia, that the United States Supreme Court recognized that the Indians Civil Rights Act, 25 U.S.C. § 1302, provides non-Indians with various protections against unfair treatment in the tribal courts.

Thus, it is presumed that father has legal rights he may assert and that same will be protected and recognized by fair dealing in the tribal court.

ISSUE V

I concur.