Unified Judicial System

 

 
 State of South Dakota ex rel Cheryl L. LeCompte
Plaintiff and Appellee v.
Kenton D. Keckler
Defendant and Appellant [2001 SD 68]
South Dakota Supreme Court
Appeal from the Circuit Court of The Fourth Judicial Circuit
Dewey County, South Dakota
Hon. Warren G. Johnson, Judge
Mark Barnett Attorney General David L. Braun Special Assistant Attorney General Child Support Enforcement Pierre, South Dakota
Attorneys for plaintiff and appellee
 
Joann M. Muir Hot Springs, South Dakota
Attorney for defendant and appellant
 
Considered on Briefs March 21, 2001
Opinion Filed 5/30/2001
#21634
KONENKAMP, Justice
[Â¶1.] We must decide if the circuit court properly exercised jurisdiction in this child support recovery action brought by the Office of Child Support Enforcement.  Both the parents and the child are tribal members, and the tribal court had previously entered an order regarding custody and visitation.  Accordingly, the tribal court had jurisdiction of the parties in its original action, but it entered only an oral order on child support.  An oral support order is not enforceable outside reservation boundaries.  It could not have been enforced in the obligorâs home state of New Mexico.  Although we would grant comity to the tribal court order had it entered an enforceable written order, in this instance, the circuit court had concurrent jurisdiction, and it was the first court to enter an enforceable written order.  We affirm the circuit courtâs exercise of jurisdiction.
Background
[Â¶2.] Cheryl LeCompte and Kenton Keckler are enrolled members of the Cheyenne River Sioux Tribe.  The two were never married but share a daughter, Jade Keckler, born on July 27, 1988.  On June 9, 1989, the Cheyenne River Sioux Tribal Court entered an order providing for joint custody.  LeCompte maintained Jadeâs physical custody, and Keckler enjoyed unrestricted visitation.  Soon after the child was born, LeCompte applied to the State for Temporary Assistance to Needy Families (TANF).  Between August 1988 and November 1992, LeCompte received $5,200 in benefits.  She and her daughter continued to reside on the reservation.
[Â¶3.] LeCompte petitioned for child support in the tribal court in June 1990.  After a hearing in March 1991, that court entered a permanent custody order.  In its findings of fact, the tribal court noted that Keckler was residing off the reservation in Spearfish, South Dakota.  In addition, the court recognized that Keckler had âcontributed towards the support of the child on his own initiative,â yet the court did not enter any written order requiring Keckler to pay child support.  According to Keckler, however, the tribal court verbally ordered him to pay $100 child support per month.  Keckler asserts that such oral pronouncements are a part of the Lakota tradition.  He claims that he has paid child support through the tribal court since 1989.  Tribal court records confirm that Keckler has consistently paid monthly support from March 1989 to June 2000.
[Â¶4.] LeCompte reapplied for TANF benefits in November 1999.  From November 1999 through August 2000, she received payments totaling $2,154.  As part of her application for benefits, LeCompte agreed to assign to the State her legal right to collect child support.  The State Department of Social Services â Office of Child Support Enforcement learned that Keckler was living in Santa Fe, New Mexico.  The State also discovered that the tribal court had entered a written order on custody and visitation, but the order did not explicitly impose a support obligation.  Consequently, the Office of Child Support Enforcement served Keckler with a Notice of Support Debt on May 30, 2000.  Keckler did not seek a hearing within the ten-day statutory time-period provided in SDCL 25-7A-7.  The State requested and obtained a support order from the circuit court in Dewey County on June 20, 2000.[1]   The court imposed a support obligation of $340 per month.  In 
addition, the court granted the State Department of Social Services a judgment against Keckler for $2,720 plus interest for payments already made by the State.[2]   That same day Keckler informed the State that he had paid child support through the Cheyenne River Sioux Tribal Court since 1989.  Later, the State agreed that Keckler should be credited for amounts previously paid through the tribal court system.
[Â¶5.] After the circuit court entered its order, Keckler moved for a declaratory judgment in tribal court.  He requested that the tribal court declare that his support obligation had been ongoing since March 1991.  While this appeal was pending, the tribal court entered its own written order for support.  In its order, the tribal court found that it had jurisdiction over the parties and the action.  The tribal support order followed the stipulation between the parties that Kecklerâs obligation would be increased to $250 per month beginning on August 31, 2000, and in October of 2000, he would be required to pay an additional $80 per month.  Moreover, the tribal court recognized that in 1991 it had entered a valid oral order for support.  Counsel for the State was given notice of and was present at this hearing.
Analysis and Decision
[Â¶6.] Keckler urges us to hold that the tribal court had âexclusive and ongoing subject matter and personal jurisdiction over both the parties and the minor childâ and that the circuit court erred in taking jurisdiction.  To support this assertion, Keckler emphasizes that LeCompte and his daughter are enrolled members of the Cheyenne River Sioux Tribe and continue to be domiciled on the reservation.  Likewise, Keckler is an enrolled member of the tribe but presently resides in Santa Fe, New Mexico.  He concludes that prior action by the Cheyenne River Sioux Tribal Court creates exclusive tribal jurisdiction.  A jurisdictional challenge presents a question of law; consequently, our review is de novo.  Red Fox v. Hettich, 494 NW2d 638, 642 (SD 1993)(citing State v. Spotted Horse, 462 NW2d 463, 465 (SD 1990), cert denied, 500 US 928, 111 SCt 2041, 114 LEd2d 125 (1991)).
[Â¶7.] A tribal court commands exclusive subject matter jurisdiction in domestic relations disputes between two enrolled tribal members domiciled on the reservation.  Harris v. Young, 473 NW2d 141, 144 (SD 1991)(citing Fisher v. District Court of Sixteenth Jud. Dist., 424 US 382, 96 SCt 943, 47 LEd2d 106 (1976))(further citations omitted).  Keckler is not domiciled on the reservation, however.  He presently lives in New Mexico.  Furthermore, at the time of the initial custody hearing on which Keckler relies, the tribal court found that Keckler was âa resident of Spearfish, South Dakota which is outside the jurisdiction of [the tribal] court.â  When tribal members reside outside the reservation, they are generally subject to ânondiscriminatory state law.â  Wells v. Wells, 451 NW2d 402, 405 (SD 1990).  Since Keckler was domiciled off the reservation, and LeCompte and Jade continued to reside on the reservation, the circuit and tribal court possessed concurrent jurisdiction in this child support action.  See Harris, 473 NW2d at 145 (applying the reasoning of Wells to a child custody action).  When a tribal court and circuit court possess concurrent jurisdiction, the case may be adjudicated by the first tribunal to validly exercise jurisdiction.  Id.
[Â¶8.] To dispute Kecklerâs assertion of exclusive jurisdiction, the State attempts to characterize this as a dispute between âthe State of South Dakota, a non-reservation entityâ and a tribal member âwho has chosen to reside off the reservation for . . . nine years.â  The State relies on SDCL 25-7A-3 for its position.[3]   This statute makes the Department of Social Services a âparty in interestâ and grants it the power to prosecute support actions on âbehalf of the child.â  But this statute is not jurisdictional; it simply grants the Department the power to proceed in a court of proper jurisdiction to âprosecute or maintain [a] support action.â  See SDCL 25-7A-3.  Thus, the Stateâs statutory authority is irrelevant to our decision on subject matter jurisdiction.[4] 
[Â¶9.] Because of our conclusion that the tribal and circuit court had concurrent jurisdiction over the subject matter, we next consider whether the custody order of the tribal court was also a prior adjudication of Kecklerâs support obligation.  See Leon v. Numkena, 689 P2d 566, 569 (ArizCtApp 1984).  We apply the principle of comity.  See Wells, 451 NW2d at 403; Gesinger v. Gesinger, 531 NW2d 17, 19-20 (SD 1995); see also Leon, 689 P2d at 569-70.  Comity involves the recognition of âlegislative, executive, or judicial acts of another nation. . . .â  Gesinger, 531 NW2d at 19 (citations omitted).  Comity is a question examined de novo.  Id. 
[Â¶10.] In South Dakota, a tribal court order must satisfy certain statutory prerequisites to be granted comity in circuit court.  See SDCL 1-1-25.[5]   The particular question here is whether the âoralâ tribal court order for support can be recognized even though it was not reduced to writing.  Keckler asserts that in 1991 the tribal court orally required him to pay $100 per month child support through the tribal court system.  However, the findings of fact and conclusions of law entered by the tribal judge simply stated that Keckler had âcontributed towards the support of his child on his own initiative.â  SDCL 1-1-25 provides for recognition of a tribal court âorder or judgment.â (Emphasis added).  An order must be reduced to writing before it takes legal effect.  See SDCL 15-6-58; Moore v. Michelin Tire Co., Inc., 1999 SD 152, Â¶46, 603 NW2d 513, 525 (citations omitted); State v. Lowther, 434 NW2d 747, 752 (SD 1989).[6]   As the original order was not reduced to writing, it could not be enforced outside the reservation.  This case, however, presents an additional development that the circuit court could not have known in advance.
[Â¶11.] After the circuit court entered its support order, Keckler sought a declaratory judgment in tribal court.  Counsel for Keckler stated at oral argument in this appeal that the purpose for seeking the declaratory judgment was to reduce the verbal support order to writing.  The tribal court granted Kecklerâs request and explicitly recognized that in 1991 an âoral orderâ was made, requiring $100 per month payments.  The court also reduced a new stipulated support agreement to writing.[7]   We are left to determine the effect of this subsequent tribal court order.
[Â¶12.] Had the tribal court declared that the 1991 written order was intended to encompass custody and support, thereby clarifying the prior order, granting comity might be appropriate.  State courts generally possess âinherent power to correct their records to reflect accurately the judgment of the court, whether the correction is necessitated by clerical errors or inadvertence.â  Coffey v. South Dakota Bd. of Pardons and Paroles, 1999 SD 164, Â¶9, 604 NW2d 238, 240 (citing Wolff v. Weber, 1997 SD 52, Â¶8, 563 NW2d 136, 138).  It seems only reasonable to suppose that tribal courts possess the same inherent power.  However, the tribal courtâs subsequent action here cannot be characterized as a correction of its record.  The tribal court simply recognized that âthe Honorable Judge James Chasing Hawk, . . . in 1991, did make an oral order.â  Oral orders have no legal effect beyond the reservation.  SDCL 15-6-58; Moore, 1999 SD 152, Â¶46, 603 NW2d at 525 (citations omitted).  Such an order could not have been enforced in New Mexico.  Between 1991 and October 2000, no enforceable tribal support order was in place; therefore, the circuit court validly exercised its concurrent jurisdiction.
[Â¶13.] Affirmed.
[Â¶14.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.

[1].         See SDCL 25-7A-5(3); SDCL 25-7A-7.

[2].         The circuit court order contained no reference to TANF payments made by the State from August 1988 through November 1992.  Therefore, benefits paid during that period have no bearing on this appeal. 

[3].         SDCL 25-7A-3 provides:
The department of social services is a party in interest and is subrogated to the right of any dependent child or spouse to prosecute or maintain any support action or execute any administrative remedy existing under the law of this state to obtain reimbursement of public money expended for or on behalf of the child.  If a court order, administrative order or final decree of divorce enters judgment for an amount of support to be paid by a parent or other responsible person, the department is subrogated to the debt created by such order, and any money judgment shall be in favor of the department.

[4].         The State also cites precedent from other jurisdictions to bolster its claim that state court jurisdiction is proper.  See e.g. Becker County Welfare Dept. v. Bellcourt, 453 NW2d 543 (MinnCtApp 1990); County of Inyo v. Jeff, 277 CalRptr 841 (CalCtApp 1991); Jackson County Child Support Enforcement Agency v. Swayney, 352 SE2d 413 (NC 1987); State Dept. of Human Services v. Jojola, 660 P2d 590 (NM 1983).  In two of these cases there was no tribal forum available.  Bellcourt, 453 NW2d at 544; Jeff, 277 CalRptr at 843 n4.  Furthermore, the Swayney court at least implicitly recognized the existence of concurrent jurisdiction in this type of action.  See Swayney, 352 SE2d at 418.  Consequently, these cases have little bearing on our decision as we conclude that concurrent jurisdiction exists.

[5].         See also Gesinger, 531 NW2d at 19; Red Fox, 494 NW2d at 641.

[6].         Rule 58 of the Cheyenne River Rules of Civil Procedure evinces a similar requirement: 
            (1) upon a general verdict of a jury, or upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court; (2) upon a decision by the court granting other relief, or upon a special verdict or a general verdict accompanied by answers to interrogatories, the court shall thereupon enter it.  Every judgment shall be set forth on a separate document.  A judgment is effective only when so set forth and when entered as provided in Rule 79(a).
There is some dispute whether this provision of the Cheyenne River Rules was effective in 1991.  It was clearly effective at the time of the declaratory judgment action.

[7].         It should be mentioned that the Support Order issued in October 2000 was not included in the record of action transferred to this Court.  It is, however, included in Kecklerâs reply brief.  While we generally refuse to consider facts outside the record, it is appropriate to take judicial notice of this subsequent tribal court proceeding as it directly relates to the matters at issue and involves the same parties.  See Vento v. Colorado Nat. Bank, 985 P2d 48, 52 (ColoCtApp 1999)(â[C]ourts generally do not judicially notice records and facts in proceedings from other courts.  However, one exception to this general rule is that a court may take judicial notice of the contents of court records in a related proceeding.â)  Id. (Citations omitted).  See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F2d 244, 248 (9thCir 1992) (citations omitted).