#28424-a-MES
**2019 S.D. 35**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

In the Matter of the CLEOPATRA CAMERON GIFT TRUST,
Dated May 26, 1998, and the CAMERON FAMILY EXEMPT GST TRUST
FBO CLEOPATRA CAMERON, created under the
CAMERON FAMILY TRUST,
dated December 20, 1996, as amended.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA
* * * *

THE HONORABLE NATALIE DAMGAARD
Judge
* * * *

DREW DUNCAN
AMANDA W. ENGEL of
The Duncan Law Firm, LLP
Sioux Falls, South Dakota               Attorneys for appellant
Christopher Pallanck.


COREY THOMAS DENEVAN of
Boyce Law Firm, LLP
Sioux Falls, South Dakota               Attorneys for appellee Trident
Trust Company.

REBECCA L. WILSON of
Myers Billion, LLP
Sioux Falls, South Dakota               Guardian Ad Litem for appellee
minor children C.S.C.-P. and
T.C.C.-P.

* * * *

ARGUED ON
NOVEMBER 13, 2018
OPINION FILED **06/26/19**

JAYNA M. VOSS
BOBBI L. THURY of
Legacy Law Firm, P.C.
Sioux Falls, South Dakota     Attorneys for appellee
               Cleopatra Cameron.

#28424

SALTER, Justice

[¶1.]     Trust beneficiary Cleopatra Cameron filed a petition in the circuit court requesting a determination of whether the trust's spendthrift provision prohibits direct payments of her child support obligation to her ex-husband, Christopher Pallanck.  A California family court previously ordered the direct payments as part of the couple's divorce, citing a particular feature of California trust law.  The circuit court concluded the direct payment order was a method of enforcing Cleopatra's child support obligation to be determined under local law and, therefore, not entitled to full faith and credit.  The court further determined that South Dakota law recognizes the validity of spendthrift clauses and their prohibition upon compulsory direct payments to a beneficiary's creditors, like Christopher, who now appeals.  We affirm.

## Background

[¶2.]     Cleopatra's father, Arthur A. Cameron Jr., established the Cameron Family Trust for his own benefit during his life.  He also established the Cleopatra Cameron Irrevocable Gift Trust, under which Cleopatra was the primary beneficiary.  Arthur died on September 2, 2001, and the Family Trust was partitioned into individual shares for each of his three children, including a share for Cleopatra.  This share was further divided into the GST[1] Exempt Trust and the Non-GST Exempt Trust.  Spendthrift provisions in the Gift Trust, Non-GST Exempt

---

1.      The term "GST" is an estate planning term used to refer to a generation skipping transfer, most often used in connection with the generation skipping transfer tax.  *See* 26 U.S.C. § 2601 (2013), et seq.  GST trusts are specifically defined under the Internal Revenue Code at 26 U.S.C. § 2632(c)(3)(B) (2013).

Trust, and GST Exempt Trust (collectively the Trust) prohibit the trustee from making direct payments to Cleopatra's creditors and grant the trustee the sole discretion to make distributions.

[¶3.] Cleopatra and Christopher were married in 2005 and lived in California with their two young children. Christopher commenced a divorce action in January 2009 in Santa Barbara County, California. During the pendency of the divorce, the California family law court (the family court) entered interim orders granting Christopher sole custody of the children, as well as establishing temporary child support and spousal support obligations for Cleopatra. At the time, Cleopatra received Trust distributions of $40,000 per month which, when considered with Christopher's relatively modest income from part-time employment, yielded a monthly child support obligation for Cleopatra of $8,863. In addition, the court ordered Cleopatra to pay Christopher interim spousal support of $14,761 per month and interim attorney's fees of $50,000.

[¶4.] The family court joined the Trust in the divorce action on February 3, 2009, to facilitate regular payment of the interim financial obligations it had imposed upon Cleopatra. The family court later confirmed that its intent was to utilize a particular feature of California trust law to require the Trust to directly fund Cleopatra's child support obligation.[2]

---

2. As described more fully below, the feature of California trust law that preempts a trust instrument's spendthrift provision and allows for compulsory trust distributions to non-beneficiaries only applies to child support and spousal support payments, though the family court here also utilized the procedure to enforce Cleopatra's other interim financial obligations to pay attorney's fee awards.

[¶5.]     On March 10, 2009, the family court conducted a hearing on Christopher's motion to show cause to determine whether Cleopatra and Wells Fargo, who were co-trustees at the time, should be held in contempt for failing to pay temporary child support. The court found that Cleopatra and Wells Fargo acted in bad faith and abused their discretion when they failed to satisfy the child support obligation and issued the following order:

> The [c]ourt will order the Bank, and its successor, and Mother to pay child support, spousal support, and attorney fees from Mother's Trust including any other ordered awards in this action *until further order of the [c]ourt. Wells Fargo Bank and any successor are joined in this action until further order of [c]ourt.*

(Emphasis added.)

[¶6.]     Wells Fargo objected on the basis that the family court had no authority to order direct payments from a spendthrift trust to a creditor or child support obligee. However, it ultimately complied with the March 10, 2009, order, made the payments directly to Christopher, and did not seek interlocutory appellate review.

[¶7.]     Around the time the divorce action was beginning, Cleopatra and Wells Fargo requested approval from a different California judge sitting as a probate court to resign their positions as co-trustees. The probate court granted the request and approved the appointment of BNY Mellon (BNY) as the sole successor trustee in April 2009, after BNY agreed to be bound by the family court's March 10 child support and spousal support order.

[¶8.]     At this juncture, it seems helpful to explain the provisions of California trust law which are at the heart of this appeal. Where, as here, child support

-3-

obligors are trust beneficiaries who do not have the ability to compel distributions, California's probate code, nevertheless, allows a court to "order the trustee to satisfy . . . [a] support judgment out of . . . future payments that the trustee, *pursuant to the exercise of the trustee's discretion,* determines to make to or for the benefit of the beneficiary." Cal. Prob. Code § 15305(c) (West 2019) (emphasis added). A California Court of Appeal panel has interpreted this text to authorize an order compelling a trustee to satisfy an unpaid support obligation where the trial court finds the trustee has exercised its discretion in bad faith to deny a request for a distribution. *Ventura Cty. Dep't of Child Support Servs. v. Brown,* 11 Cal. Rptr. 3d 489, 498 (Cal. Ct. App. 2004). Relying upon the fact that the trustee had not exercised its discretion to satisfy a child support obligation, the *Ventura County* court concluded:

> [A] court may overcome the trustee's discretion under the narrow circumstances present here: when there is an enforceable child support judgment that the trustee refuses to satisfy. Under these circumstances, the trial court may order the trustee to satisfy past due and ongoing support obligations from the trust.

*Id.*

[¶9.]    In addition to imposing interim support obligations upon Cleopatra, the family court also ordered "Mother and/or the Trusts" to pay interim attorney's fees to Christopher. The court initially ordered $50,000 in attorney's fees and then ordered an additional $100,000 in attorney's fees on June 16, 2009, both of which were paid by the Trust. The court ordered another $100,000 for attorney's fees on December 1, 2009. BNY elected to appeal the December 1 attorney's fee award, which was immediately reviewable under California law.

[¶10.]        In an April 2011 unpublished decision, a California Court of Appeal panel reversed the family court's order to the extent it required BNY to make direct attorney's fee payments to Christopher. *In re Marriage of Pallanck*, No. 1304784, 2011 WL 1459964 (Cal. Ct. App. Apr. 18, 2011). The appellate court concluded the *Ventura County* exception that allows a court to order a trustee to make direct payments from a spendthrift trust is narrow and depends upon the existence of an enforceable child support obligation that a trustee refuses in bad faith to satisfy. *Id*. at *4. The family court's December 1 order, by contrast, did not involve a child support obligation or a bad faith "refusal to satisfy a delinquent order."[3] *Id*.

[¶11.]        While the attorney's fees appeal was pending, the family court issued a final judgment of divorce on October 26, 2010. The judgment incorporated a written statement of decision, dated May 17, 2010, in which the family court granted Christopher legal and physical custody of the couple's two minor children. Cleopatra's parenting time was significantly restricted and subject to supervision. The court set Cleopatra's monthly child support at $8,786 and ordered the Trust to "make the child support payments directly to Father each and every month[,]" adopting "in full" its earlier "comments on this subject made in [c]ourt and in writing[.]"

---

3.      It is not clear from the appellate opinion whether the panel relied upon the fact that the interim fee award was not a support order and, therefore, not within the text of Cal. Prob. Code § 15305 or whether the appellate court's holding was based upon the absence of a bad faith determination. Both seem implicated in the decision, and it appears either would have served as a basis to reverse the family court's December 1 order.

[¶12.] Following the judgment, the family court later modified the amount of Cleopatra's child support obligation on October 9, 2012. The decision does not reference the Trust as a party or incorporate the rulings from the 2010 judgment, and it is unclear from the record that the Trust received notice of the modification proceeding. Nevertheless, the Trust continued to pay child support directly to Christopher following the modification.

[¶13.] A few months earlier, in July 2012, Cleopatra invoked her authority under the Trust instruments to move the situs of the Trust to South Dakota. BNY resigned as the sole trustee in 2014 and was replaced by Citicorp Trust of South Dakota. Citicorp resigned the same year and was replaced by Bankers Trust Company of South Dakota. On February 28, 2014, Cleopatra petitioned for court supervision of the Trust in Lincoln County, seeking several forms of relief, including approval of the change of situs and amendment of the Trust instruments. The circuit court granted Cleopatra's petition and concluded supervision of the Trust after allowing Cleopatra's requested relief. The Trust continued to pay child support to Christopher for a period of time despite its new situs.

[¶14.] Around November 2016, Trident Trust Company, Inc. (Trident) became the acting trustee, and Empire Trust (Empire) was appointed as the trust protector. *See* SDCL 55-1B-1(2) (defining the role of trust protector); SDCL 55-1B-6 (listing potential statutory "powers and discretions" of trust protectors). Empire reviewed the Trust's spendthrift provision and determined that it would not accede to the trustee's direct child support payments to Christopher. Empire viewed the direct payments as contrary to the Trust's spendthrift provision and the

Legislature's explicit intent regarding the rights of creditors to the assets of spendthrift trusts. Empire also regarded the direct payments as improvident in light of the Trust's rapidly depleting assets. In January 2017, Trident ended direct child support payments to Christopher.

[¶15.] On May 1, 2017, Cleopatra petitioned the circuit court to resume court supervision of the Trust. She also sought a declaration from the court as to whether the Trust is prohibited from making child support payments directly to Christopher. The court resumed supervision over the Trust[4] and, following a hearing, issued a memorandum opinion in which it concluded "the Trust is prohibited by the terms of the Trust from making any child support payments directly to [Christopher]."

[¶16.] The circuit court also concluded that the means of enforcing the California child support obligation were determined by South Dakota—not California—law. Therefore, the family court's order requiring the trustee to make direct child support payments to Christopher in contravention of the Trust's spendthrift provision was not entitled to full faith and credit. Christopher appeals, [5] raising one issue for our consideration: whether the circuit court erred when it determined the Trust is prohibited from making child support payments directly to Christopher.

---

4. The children are named as secondary beneficiaries under the Trust, and the circuit court appointed a guardian ad litem to represent their interests.

5. Cleopatra and the Minor Children, through their guardian ad litem, joined the brief of Appellee Trident Trust pursuant to SDCL 15-26A-67.

**Analysis**

[¶17.] The current dispute arose in the context of the circuit court's supervision of the Trust and was prompted by a request for the court's instructions concerning the Trust's obligation under the child support direct payment provision of the California divorce judgment.[6] On appeal, the question presented by Christopher is "[w]hether the Trust is prohibited [by its spendthrift provision] from making child support payments directly to[him]. . . ." We think the more relevant inquiry, however, is whether the California direct payment order is entitled to full faith and credit. This issue involves purely legal questions of constitutional principles of full faith and credit as well as questions of statutory interpretation. "Issues of statutory and constitutional interpretation are questions of law" which we review de novo. *Expungement of Oliver*, 2012 S.D. 9, ¶ 5, 810 N.W.2d 350, 352.

[¶18.] The Full Faith and Credit Clause of the United States Constitution provides that, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. The command to afford the judgments of foreign states full faith and credit is further codified at 28 U.S.C. § 1738 (2013), which provides that authenticated records and judicial proceedings "shall have the same full faith and credit in every

---

6. Two statutes within SDCL Chapter 21-22, authorizing court supervision of trusts, are implicated here. First, SDCL 21-22-13 provides that "[t]he trustor, a fiduciary, or a beneficiary of any trust under court supervision may at any time petition the court for its action as to any matter relevant to the administration of the trust[.]" In addition, SDCL 21-24-5 provides that interested persons may seek "a declaration of rights or legal relations . . . to direct the personal representatives or trustees . . ." or "determine any question arising in the administration of the estate or trust[.]"

court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State[.]"

[¶19.] The United States Supreme Court has recognized that providing full faith and credit to the judgments of foreign states serves the salutary purpose of limiting the opportunity to relitigate issues that have been resolved previously through the judicial process. *Riley v. New York Trust Co.*, 315 U.S. 343, 348-49, 62 S. Ct. 608, 612, 86 L. Ed. 885 (1942). As a result, the Full Faith and Credit Clause "alter[s] the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and . . . make[s] them integral parts of a single nation." *V.L. v. E.L.*, __ U.S. __, __, 136 S. Ct. 1017, 1020, 194 L. Ed. 2d 92 (2016) (per curiam) (quoting *Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 277, 56 S. Ct. 229, 234, 80 L. Ed. 220 (1935)); *see also Wooster v. Wooster*, 399 N.W.2d 330, 334 (S.D. 1987) (recognizing that valid foreign judgments are given effect in the interests of comity).

[¶20.] Generally, if the judgment was "rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, [it] qualifies for recognition throughout the land." *Id.* Furthermore, "[a] State may not disregard the judgment of a sister State because it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits." *Id.*; *see also Milliken v. Meyer*, 311 U.S. 457, 462, 61 S. Ct. 339, 342, 85 L. Ed. 2d 278 (1940) ("[T]he full faith and credit clause of the Constitution precludes any inquiry into the

merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based.").

[¶21.] There are, however, certain limitations upon the requirements of the Full Faith and Credit Clause. Providing full faith and credit to a foreign state's judgment "does not mean that States must adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments. Enforcement measures do not travel with the sister state judgment as preclusive effects do; such measures remain subject to the evenhanded control of forum law." *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 235, 118 S. Ct. 657, 665, 139 L. Ed. 2d 580 (1998); *see also* Restatement (Second) of Conflict of Laws § 99 (1971) ("The local law of the forum determines the methods by which a judgment of another state is enforced."). "'Evenhanded' means only that the state executes a sister state judgment in the same way that it would execute judgments in the forum court." *Adar v. Smith*, 639 F.3d 146, 159 (5th Cir. 2011).

[¶22.] Justice Scalia, in his concurring opinion in *Baker*, noted that the power of the Full Faith and Credit Clause is to make the judgment of "one State[] conclusive evidence in the courts of another State[.]" 522 U.S. at 242, 118 S. Ct. at 668 (Scalia, J. concurring) (quoting *Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 291-92, 8 S. Ct. 1370, 1375, 32 L. Ed. 239 (1888)). Yet despite the preclusive power of one state's judgment, it "can only be executed in [the forum state] as its laws may permit." *Id.* (quoting *Lynde v. Lynde*, 181 U.S. 183, 187, 21 S. Ct. 555, 556, 45 L. Ed. 810 (1901)); *see also Adar*, 639 F.3d at 161 (holding there was no violation of the Full Faith and Credit Clause where a Louisiana registrar recognized the validity of

a New York adoption decree, but only allowed one unmarried parent's name on the Louisiana birth certificate because under Louisiana law, only married couples could jointly adopt).

[¶23.]     Here, an examination of the statute upon which the family court relied to order direct Trust payments to Christopher reveals it to be a conspicuous method of enforcing a support obligation where an obligor is the beneficiary of a trust protected by a spendthrift provision:

> (c) Whether or not the beneficiary has the right under the trust to compel the trustee to pay income or principal or both to or for the benefit of the beneficiary, the court may, to the extent that the court determines it is equitable and reasonable under the circumstances of the particular case, *order the trustee to satisfy all or part of the support judgment* out of all or part of future payments that the trustee, pursuant to the exercise of the trustee's discretion, determines to make to or for the benefit of the beneficiary.
>
> (d) This section applies to a support judgment notwithstanding any provision in the trust instrument.

Cal. Prob. Code § 15305 (emphasis added.)

[¶24.]     It is equally clear that the *Ventura County* court also perceived Cal. Prob. Code § 15305 to be an enforcement provision. The *Ventura County* court broadened the enforcement authority of California trial courts to order direct trust payments, notwithstanding a spendthrift provision, upon a finding the trustee acted in bad faith by not authorizing a distribution. The court described Cal. Prob. Code § 15305 as a means of enforcing the support order, observing, "A spendthrift provision 'is not effective to exempt the trust from *enforcement of a judgment for support of a minor child . . . .*'" *Ventura Cty.*, 11 Cal. Rptr. 3d at 495 (emphasis added) (quoting Cal. Prob. Code § 15305, cmt.).

-11-

[¶25.] Viewed in this context, the family court's order compelling the direct payment of child support from the Trust was an unmistakable means of enforcing Cleopatra's obligation. Christopher's counsel acknowledged at oral argument that the direct payment order was, in truth, an enforcement method. In our view, the trustee was not the child support obligor and was only nominally joined in the divorce action to enforce Cleopatra's obligation. Because the means of enforcing judgments do not implicate full faith and credit considerations, the circuit court here was not required to submit to the California order compelling direct payments from the Trust if this method of self-executing enforcement is not authorized by South Dakota law. Based upon a review of our relevant statutes, it is not authorized and is, in fact, expressly prohibited.

[¶26.] Our Legislature has placed formidable barriers between creditor claims and trust funds protected by a spendthrift provision. *See* SDCL 55-1-41 ("If the trust contains a spendthrift provision, no creditor may reach present or future mandatory distributions from the trust at the trust level."); SDCL 55-1-35 ("No trustee is liable to any creditor for paying the expenses of a spendthrift trust."). More to the point, the Legislature has emphatically rejected even the specter of an argument that would allow a child support creditor to reach trust funds protected by a spendthrift provision. Indeed, this precise legal theory is identified in § 59 of the Restatement (Third) Trusts (2003) which states that "[t]he interest of a beneficiary in a valid spendthrift trust can be reached in satisfaction of an enforceable claim against the beneficiary for . . . support of a child . . . ." However, the Legislature anticipated such an argument in South Dakota courts and

definitively foreclosed it with its 2007 enactment of SDCL 55-1-25 which provides in part:

> In the area of creditor rights, the Restatement of Trusts (Third) and the Uniform Trust Code create many new positions of law as well as adopts many minority positions of law. The provisions of §§ 55-1-24 to 55-1-43, inclusive, affirmatively reject many of these positions. *Therefore, the Legislature does not intend the courts to consult the Restatement (Third) of the Law of Trusts . . . § 59 . . . with respect to subject matters addressed by the provisions of §§ 55-1-24 to 55-1-43, inclusive.*

(Emphasis added); *see also Richardson v. Richardson*, 2017 S.D. 92, ¶ 16, 906 N.W.2d 369, 374 (stating that courts "must be mindful of the Legislature's public policy determinations . . . .").

[¶27.]     Further, in light of this clear statutory course, we cannot accept Christopher's argument that we reverse the circuit court because our Legislature has taken "a stance and is not willing to allow our trust laws to evade outstanding child support obligations." In fact, the statute upon which he relies for this broad public policy argument is SDCL 55-16-15 which, by its terms, does not apply to the situation we confront here. The statute simply prevents child support obligors from transferring assets into a domestic asset protection trust to avoid their preexisting child support obligations. Here, though, Cleopatra is not the settlor of the Trust, and there is no claim she transferred assets into the Trust to avoid child support obligations.[7]

---

7.     Christopher also suggests that the direct payment provision of the California divorce judgment could be viewed as akin to an "alternative arrangement" in lieu of an order for withholding of income under SDCL 25-7A-23. However, the statute applies only to actual agreements between the parties which are reduced to writing and "approved by the court." Here, these circumstances

(continued . . .)

-13-

[¶28.]     Nor are we persuaded by Christopher's argument that the absence of appellate review of the family court's order for direct trust payments implicates principles of res judicata which, in turn, bar any objection in South Dakota. Simply put, the order remains an unmistakable method of self-executing enforcement which does not "travel with the sister state judgment." *Baker*, 522 U.S. at 235, 118 S. Ct. at 665. Therefore, the constitutional full faith and credit issue remains the central inquiry guiding our review, even amid Christopher's res judicata argument. *See* 18B Charles Alan Wright et al., *Federal Practice & Procedure* § 4467 (2d ed.), Westlaw (April 2019 update) ("It may prove that the[] exceptions [to full faith and credit] will generally mean only that direct enforcement can be denied, while res judicata is still required in some part. A second state need not directly enforce an injunction entered by another state, for example, but may often be required to honor the issue preclusion effects of the first judgment.").

[¶29.]     Furthermore, because Christopher has not registered a judgment for enforcement, it is unnecessary to address his arguments for the application of the Uniform Enforcement of Foreign Judgments Act under SDCL 15-16A and the Uniform Interstate Family Support Act (UIFSA) under SDCL 25-9C. However, even if the order had been registered for enforcement under SDCL 25-9C-602, the registered support order is only "enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of this state." SDCL 25-9C-603(b). Similarly, the choice of law provisions of the UIFSA provide that an

_____

(. . . continued)
        are not present, and we determine the provisions of SDCL 25-7A-23 are not
        applicable.

-14-

enforcing state "shall apply the procedures and remedies of this state." SDCL 25-9C-604(c); *see also*, 28 U.S.C. § 1738B(h) (2013) (Full Faith and Credit for Child Support Orders Act (FFCCSOA)) ("In a proceeding to establish, modify, or *enforce* a child support order, the forum State's law shall apply . . . .") (emphasis added).

[¶30.] Under the circumstances, therefore, both the UIFSA and the FFCCSOA leave enforcement mechanisms to the legal standards of the forum state, even if it is without jurisdiction to modify the order. In this regard, a forum state may use its own enforcement mechanisms if it does not alter "the amount, scope, or duration" of the issuing state's judgment. *See, e.g., Hamilton v. Hamilton*, 914 N.E.2d 747, 752 (Ind. 2009) (Indiana court's order for parent to pay $150 a month in child support to avoid incarceration was a "valid enforcement mechanism[]" because arrearages were accrued in accordance with a Florida court's order.); *In re Justin H.*, No. M2013–02517–COA–R3–JV, 2015 WL 3455953 at *6 (Tenn. Ct. App. May 29, 2015) ("[T]he trial court did not impermissibly 'modify' the original child support order by changing only the intermediary designated to receive Ms. Hansen's child support payment. . . . Instead this minor alteration constituted an enforcement mechanism[.]").[8]

[¶31.] Our holding here has no impact upon Cleopatra's legal obligation to support her children. This obligation remains very much intact and is the subject of continuing litigation in the California family court which appears to have

---

8. *See also Loree v. Pearson*, 88 S.D. 330, 332, 219 N.W.2d 615, 616 (1974) (holding trial court impermissibly modified a final foreign judgment by reducing the amount).

#28424

continuing jurisdiction.[9]  Our decision here is consistent with overarching principles

of full faith and credit which apply broadly to all judgments and orders.[10]

[¶32.]     We affirm.

[¶33.]     GILBERTSON, Chief Justice, and KERN and JENSEN, Justices,

concur.

---

9.  Trident Trust offers a multi-faceted jurisdictional argument on appeal which posits that the family court lacked jurisdiction over the Trust in 2010 and also that it lacks jurisdiction over the Trust now after the situs was changed to South Dakota.  The former argument, if it were successful, could serve as a basis for denying full faith and credit to the direct payment order, but on this record, we are not convinced the family court lacked either subject matter jurisdiction or personal jurisdiction.  *See V.L.*, 136 S. Ct. at 1021 (citation omitted) ("Where a judgment indicates on its face that it was rendered by a court of competent jurisdiction, such jurisdiction 'is to be presumed unless disproved.'").  Trident Trust's latter jurisdictional argument does not alter our full faith and credit analysis and, if accepted, would mean that a trust's relocation to South Dakota categorically relieves it of all obligations under orders previously rendered in other jurisdictions.  We adopt no such rule and resolve this case based on its unique facts and procedural history under the principles set forth above.

10.  Because it is not separately raised as an issue in this appeal, we express no opinion as to the efficacy of the decision by the trustee and trust protector to unilaterally cease direct payments to Christopher prior to a judicial determination that it was relieved of any obligations under the terms of the order.

-16-