#30046-r-JMK
**2024 S.D. 50**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LESLIE J. TORGERSON,                    Plaintiff and Appellant,

   v.

TERRI A. TORGERSON,                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
ROBERTS COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JON S. FLEMMER
Judge

\* \* \* \*

THOMAS K. WILKA of
Hagen, Wilka & Archer, LLP
Sioux Falls, South Dakota

CRAIG O. ASH
Milbank, South Dakota                    Attorneys for plaintiff and
                                         appellant.


GORDON P. NIELSEN of
Delaney, Nielsen & Sannes, P.C.
Sisseton, South Dakota                    Attorneys for defendant and
                                          appellee.

\* \* \* \*

ARGUED
APRIL 26, 2023
OPINION FILED **08/21/24**

#30046

KERN, Justice

[¶1.]        Terri Torgerson, an enrolled member of the Sisseton Wahpeton Oyate Tribe (SWO), filed divorce proceedings against Leslie Torgerson, a non-Indian, in tribal court.  Leslie then filed divorce proceedings in Roberts County.  He also moved to dismiss the tribal court proceedings for lack of jurisdiction and improper service of process.  The tribal court denied his motion, finding that it had jurisdiction and service was proper.  Terri subsequently moved to dismiss Leslie's divorce proceedings in Roberts County.  The circuit court granted Terri's motion, concluding that the tribal court's order was entitled to full faith and credit.  Leslie appeals the circuit court's order.  We reverse.

## Factual and Procedural History

[¶2.]        Leslie and Terri were married in Vermillion, South Dakota, on October 7, 1994.  Three years into the couple's marriage, Leslie adopted Terri's son, an enrolled member of SWO, who is now in his thirties.  No biological children were born to the marriage.  The couple lived in the same home in Sisseton, South Dakota, for their entire marriage.  The home, while on fee land, is within the original boundaries of the Lake Traverse Indian Reservation.  However, in *DeCoteau v. District County Court*, 420 U.S. 425, 95 S. Ct. 1082, 43 L. Ed. 2d 300 (1975), the Supreme Court held that Congress disestablished the Lake Traverse Reservation through an act of Congress in 1891 approving a surplus land agreement.

[¶3.]        Between 1994 and 2004, the couple owned and operated Dakota Sioux Fuel & Propane, Inc., which had been incorporated under Terri's name and held a tribal charter.  During its time of operation, the corporation conducted business

-1-

with SWO and had some involvement with its tribal court system. Dakota Sioux Fuel & Propane, Inc. was administratively dissolved on July 1, 2004. Since its dissolution over twenty years ago, Leslie has not conducted business with SWO or on SWO's tribal land. Therefore, Leslie's sole affiliation with SWO has been his wife's and adoptive son's status as enrolled members.

[¶4.] On October 18, 2021, Terri filed a summons and complaint against Leslie in SWO's tribal court seeking a divorce. Leslie was personally served with copies of the filed summons and complaint on October 27. Although the summons and complaint were filed with SWO's clerk of court, the clerk did not issue the summons for service on Leslie. The summons and complaint were signed and issued by Terri's attorney only.[1] Eileen Pfeiffer, clerk of SWO's tribal court, explained in an affidavit that she did not issue a tribal court summons because she was waiting for a delivery address from Terri's attorney. Because Pfeiffer was never provided with the address, she did not issue the tribal summons.

[¶5.] Meanwhile, Leslie filed for a divorce in state court in Roberts County. He provided the Roberts County Sheriff's Department with a copy of the summons and complaint on November 10, 2021, for service upon Terri. The sheriff, however, failed to effectuate service as requested, so Leslie utilized a private process server, who served Terri on January 26, 2022.

[¶6.] Leslie moved to dismiss Terri's divorce action in tribal court, arguing that the tribal court lacked jurisdiction, and that the service of process was

---

1. Based on the record, Leslie has yet to receive a summons issued by SWO's clerk.

improper because the summons had not been issued by SWO's clerk of court, as required under SWO's code. The tribal court held a hearing on Leslie's motion on January 10, 2022. Its order notes that neither party was personally present, but both appeared through counsel. The tribal court denied the motion, finding:

> While [Leslie] is not an SWO Tribal member, his wife and children are. He resides within the boundaries of the Lake Traverse Reservation and is employed by a Tribal entity. This claim was also filed by [Terri], who is a Tribal member. In this matter, the Tribal Court may have concurrent jurisdiction with the state, but because the claim was filed in this Court first, it obtained valid personal jurisdiction over the parties first. [Leslie] was served in a manner consistent with Tribal Court service process, and [Leslie] admitted that he had received service.

The tribal court further concluded that it had "jurisdiction in this matter, [and Leslie] was properly served with the Summons and Complaint." Leslie did not appeal the tribal court's order.

[¶7.] Terri subsequently filed a motion to dismiss and brief in support thereof with the circuit court, arguing that Leslie's divorce action should be dismissed for lack of subject matter jurisdiction, "improper venue, and failure to state a claim upon which relief can be granted." In response, Leslie directed the court to SDCL 1-1-25, which sets forth the conditions under which the court could recognize the tribal court order as a matter of comity and argued that the tribal court order could not be recognized because the tribal court did not have jurisdiction to enter it. He further noted that Terri had the burden of proving the statutory requirements by presenting clear and convincing evidence. The circuit court held a hearing on Terri's motion on May 23, 2022. Neither Leslie nor Terri testified at the hearing, and the only evidence submitted was the affidavit from Leslie. In his

affidavit Leslie averred that he was not a tribal member, nor were his biological children[2], that he and Terri had lived at the same address in Sisseton since July 1994, that he was not employed by a tribal entity, nor did he conduct business with SWO or on SWO tribal lands.

[¶8.]     After considering the parties' arguments, the circuit court concluded that it shared concurrent subject matter jurisdiction with SWO over the divorce because the Tribe has the authority to grant divorces to its members. The circuit court further concluded that "although there may have been some irregularities, the action was properly initiated in tribal court." The circuit court therefore granted Terri's motion to dismiss and ordered her counsel to submit proposed findings of fact and conclusions of law for the court's consideration.

[¶9.]     On June 5, 2022, the circuit court entered findings of fact and conclusions of law and an order dismissing Leslie's divorce action with prejudice. In its conclusions, the court stated that the case should be adjudicated by the tribunal that "first obtained valid personal jurisdiction over the parties." Deferring to the tribal court's order, the circuit court determined SWO was the first to obtain "valid personal jurisdiction" over the parties, and therefore, the court concluded that the case was first commenced in tribal court. Additionally, the circuit court, referencing what it described as "long-standing principles," held that it was "*bound* to recognize the tribal court's determination of its own jurisdiction" as a matter of full faith and credit. (Emphasis added.) The court did not refer to or apply the statutory requirements in SDCL 1-1-25 for recognizing the tribal court's order as a matter of

---

2.     Leslie indicated that his adopted son was a Tribal member.

comity. Leslie filed a notice of appeal from the circuit court's order on July 7, 2022. Both parties submitted separate motions to supplement the record, which this Court granted.[3]

[¶10.] In the interim, the tribal court continued its divorce proceedings and held a divorce trial on July 19, 2022. Leslie did not appear personally, but his attorney appeared on his behalf for the limited purpose of contesting jurisdiction. Leslie did, however, provide the tribal court with a list of personal property that the tribal court admitted as an exhibit at the divorce trial.[4] The tribal court divided the parties' marital property and entered findings of fact and conclusion of law, a decree of divorce, and judgment on August 2, 2022. Leslie filed a notice of appeal in tribal court on August 26, 2022, but the notice was rejected as untimely because it was filed after SWO's 20-day deadline to appeal.

[¶11.] In his appeal from the circuit court's order granting Terri's motion to dismiss, Leslie raises the following issues, which we rephrase and restate:

> 1. Whether Leslie is precluded from challenging the tribal court's jurisdiction in circuit court.

---

3. The parties have submitted four requests to supplement the record in total. On September 29, 2022, we granted a motion by Terri's attorney to supplement the record with an affidavit and four exhibits. Then on January 6, 2023, we granted Leslie's attorney's motion to supplement the record with an affidavit and six exhibits. We also granted a motion by Terri's attorney to supplement the record a second time with two exhibits. Lastly, Terri's attorney submitted a third motion to supplement the record with an additional exhibit which we took under advisement and now grant.

4. In an affidavit submitted to supplement the record, Leslie's attorney unequivocally denies filing the exhibits for use in the divorce trial. He avers that he left the original documents at his office and had his secretary email a copy to the clerk of the tribal court for printing so that he could have hard copies available for his convenience.

> 2.      Whether the circuit court erred by failing to determine if the tribal court order was entitled to comity under SDCL 1-1-25.

### Standard of Review

[¶12.]      In granting Terri's motion to dismiss, the circuit court extended full faith and credit to the tribal court's order finding that it had jurisdiction and determined that Terri's service of process was proper.  The application of full faith and credit raises "purely legal questions of constitutional principles," which we review de novo.  *In re Cleopatra Cameron Gift Trust*, 2019 S.D. 35, ¶ 17, 931 N.W.2d 244, 249.  "We [also] apply de novo review to a circuit court's decision to grant a motion to dismiss."  *In re Estate of Calvin*, 2021 S.D. 45, ¶ 13, 963 N.W.2d 319, 323 (citing *Fodness v. City of Sioux Falls*, 2020 S.D. 43, ¶ 9, 947 N.W.2d 619, 624).  In doing so, we give "no deference to the circuit court's determination."  *Hallberg v. S.D. Bd. of Regents*, 2019 S.D. 67, ¶ 10, 937 N.W.2d 568, 572.

[¶13.]      Furthermore, when a circuit court issues findings of fact and conclusions of law, we review the "findings of fact under the clearly erroneous standard" and the "conclusions of law de novo."  *Leedom v. Leedom*, 2020 S.D. 40, ¶ 11, 947 N.W.2d 143, 147 (quoting *Lowe v. Schwartz*, 2007 S.D. 85, ¶ 9, 738 N.W.2d 63, 66–67).  "Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo."  *State v. Myhre*, 2001 S.D. 109, ¶ 9, 633 N.W.2d 186, 188 (citing *Spenner v. City of Sioux Falls*, 1998 S.D. 56, ¶ 13, 580 N.W.2d 606, 610).

**Analysis and Decision**

### 1. Whether Leslie is precluded from challenging the tribal court's jurisdiction in circuit court.

[¶14.] As a preliminary matter, we address Terri's assertion that res judicata precludes Leslie from challenging in circuit court a tribal court's finding of jurisdiction and proper service of process after the tribal court heard argument and entered an order on the matter. Traditionally speaking, the doctrine of res judicata is a rule of intra-sovereign preclusion and finality that serves to protect litigants from repeated litigation.[5] Restatement (Second) Judgments 1 Scope (Am. L. Inst. 1982) (explaining that res judicata applies within a single legal system and addresses "the effect in a state court of a prior judgment rendered in a court of that state" or the corresponding scenario within the federal judiciary). "No legal judgment has any effect, of its own force, beyond the [legal system] of the sovereignty from which i[t]" was issued. *Wilson v. Marchington*, 127 F.3d 805, 807 (9th Cir. 1997); *see generally Comity, Black's Law Dictionary* (11th ed. 2019) (defining comity, rather than res judicata, as the practice of recognizing the judicial acts of separate sovereigns). Therefore, res judicata does not require the courts of one sovereign to recognize and enforce judicial acts rendered by courts of another sovereign. Rather, the degree to which judgments of foreign sovereigns are given

---

5. Res judicata is comprised of two interrelated preclusion concepts, claim preclusion and issue preclusion. *Healy Ranch, Inc. v. Healy*, 2022 S.D. 43, ¶ 40, 978 N.W.2d 786, 798. Issue preclusion has often been referred to independently as collateral estoppel; yet we discuss issue preclusion under the umbrella of res judicata because the difference between issue and claim preclusion is "one of degree and emphasis[,]" and we apply the same elements of res judicata under both preclusion theories. *Id.* ¶¶ 41, 43, 978 N.W.2d at 798–99.

preclusive and final effect is a matter of full faith and credit, when applicable, or comity.  We first address whether full faith and credit is applicable here.

[¶15.]	In general, "the full faith and credit clause of the Constitution precludes any inquiry [from a sister state] into the merits of [a] cause of action, the logic or consistency of the decision, or the validity of the legal principles on which [a] judgment is based." *Milliken v. Meyer*, 311 U.S. 457, 462, 61 S. Ct. 339, 342, 85 L. Ed. 278 (1940).  Through the "Constitutional provision for full faith and credit, the local doctrines of res judicata . . . become a part of national jurisprudence[.]" *Riley v. New York Tr. Co.*, 315 U.S. 343, 349, 62 S. Ct. 608, 612, 86 L. Ed. 885 (1942).  "Full faith and credit thus generally requires every State to give to a judgment at least the res judicata effect which the judgment would be accorded in the State which rendered it." *Durfee v. Duke*, 375 U.S. 106, 109, 84 S. Ct. 242, 244, 11 L. Ed. 2d 186 (1963).  Therefore, once an issue is fully and fairly litigated, a judicial determination on the matter is final and given preclusive effect among sister states, territories, and possession of the United States.  *V.L. v. E.L.*, 577 U.S. 404, 406–07, 136 S. Ct. 1017, 1020, 194 L. Ed. 2d 92 (2016).

[¶16.]	But full faith and credit does not apply to Indian tribes in the same way it applies to our sister states.  By its terms, the full faith and credit clause, as implemented by 28 U.S.C. § 1738, applies only to judgments from a state, territory, or possession of the United States, not Indian tribes.[6]  As the South Dakota District

---

6.	"Judgments rendered in a foreign nation are not entitled to the protection of full faith and credit."  Restatement (Second) Conflict of L. § 98 cmt. b (Am. L. Inst. 1971); *see generally Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 242, 118 S. Ct. 657, 668, 139 L. Ed. 2d 580 (1998) (Scalia, J., concurring)

(continued . . .)

#30046

Court recently acknowledged, modern full faith and credit statutes reflect how "Congress views a 'territory or possession of the United States' as distinct from an Indian Tribe"; therefore, "Congress not only considers it necessary to specify when [full faith and credit] legislation is meant to apply to tribes, but also that Congress is capable of doing so when it desires."[7] *Nygaard v. Taylor*, 602 F. Supp. 3d 1172, 1189, 1191 (D.S.D. 2022). Therefore, unless federal legislation specifically states otherwise, "the enforcement of tribal court judgments in other jurisdictions is . . .

---

(. . . continued)

("Judgments recovered in one State of the Union, when proved in courts of another government, whether state or national, within the United States, differ from judgments recovered in a foreign [nation] in no other respect than in not being reexaminable on their merits, nor impeachable for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties.").

7. Congress has delineated discreet exceptions for certain types of tribal court proceedings which are subject to full faith and credit:

> the Indian Land Consolidation Act, 25 U.S.C. §§ 2201–2211 (1983) (extending full faith and credit for certain actions involving trust, restricted or controlled lands), the Maine Indian Claims Settlement Act, 25 U.S.C. § 1725(g) (1980) (requiring the Passamaquoddy Tribe, the Penobscot Nation and the State of Maine to "give full faith and credit to the judicial proceedings of each other"), [] the Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901 et seq. (extending full faith and credit to tribal custody proceedings), [and the Violent Crime Control and Law Enforcement Act of 1994, 18 U.S.C. § 2265(a) (granting full faith and credit to protection orders issued by Indian tribes)].

> *Wilson v. Marchington*, 127 F.3d 805, 809 (9th Cir. 1997); *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 65 n.21, 98 S. Ct. 1670, 1681 n.21, 56 L. Ed. 2d 106 (1978) (recognizing that tribal court orders are only entitled to full faith and credit in certain circumstances). Aside from these specific proceedings, South Dakota courts must apply the principles of comity when recognizing and enforcing orders or judgments from tribal courts. SDCL 1-1-25. *State ex rel. LeCompte v. Keckler*, 2001 S.D. 68, ¶ 10, 628 N.W.2d 749, 753–54.

-9-

dependent on the local law of the enforcing jurisdiction." Frank R. Pommersheim, *The Crucible of Sovereignty: Analyzing Issues of Tribal Jurisdiction*, 31 Ariz. L. Rev. 329, 342 (1989). Here, there is no legislation requiring full faith and credit for divorce actions in tribal court.

[¶17.]     Rather, SDCL 1-1-25 provides that South Dakota courts may only give effect to a tribal court order as a matter of comity after finding certain conditions have been established. Within South Dakota, "[i]t is settled law that tribal court orders should be recognized in state courts under the principle of comity," *State ex rel. Joseph v. Redwing*, 429 N.W.2d 49, 50 (S.D. 1988), not full faith and credit. *See In re J.D.M.C.*, 2007 S.D. 97, ¶ 38, 739 N.W.2d 796, 808; s*ee generally Red Fox v. Hettich*, 494 N.W.2d 638, 641 n.3 (S.D. 1993) ("We have not extended full faith and credit to tribal court judgments in the past and are not compelled to do so now."). Through the enactment of SDCL 1-1-25, our Legislature has long recognized that the principles of comity govern the recognition and enforcement of a tribal court's order and judgment. *See* Pommersheim, 31 Ariz. L. Rev. at 342 ("A few states, as a matter of state common law, require that full faith and credit be given to tribal court judgments. Other states, like South Dakota, apply some form of the principle of comity.").

[¶18.]     "'Comity,' in the legal sense, is . . . the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation[.]" *Gesinger v. Gesinger*, 531 N.W.2d 17, 19 (S.D. 1995); *see also Comity, Black's Law Dictionary* (11th ed. 2019). Before a South Dakota court may enforce a tribal court's order or judgment, the party seeking recognition must establish by

clear and convincing evidence that the process by which the order was obtained complies with provisions of SDCL 1-1-25. Through SDCL 1-1-25, the South Dakota Legislature directs the courts of this State to inquire into the validity of the tribal court's order or judgment, including whether the tribal court had proper subject matter and personal jurisdiction. Consequently, contrary to Terri's view, the principles of res judicata and full faith and credit, as applied between the orders of SWO's tribal court and the circuit court, are inapplicable to the court's obligation under SDCL 1-1-25.

[¶19.] Yet, Terri argues that two of this Court's past cases support applying res judicata and giving full faith and credit to the tribal court's order here. *See Wells v. Wells (Wells II)*, 2005 S.D. 67, 698 N.W.2d 504 and *In re J.D.M.C.*, 2007 S.D. 97, 739 N.W.2d 796. Terri's reliance on these cases, however, is misplaced.

[¶20.] To accurately understand our holding in *Wells II*, it is helpful to review the *Wells* case from its inception. In *Wells I*, "William and Dolly, enrolled members of the Crow Creek Tribe," resided on the Crow Creek Reservation with their five children until Dolly took the children and moved to Rapid City. *Wells v. Wells (Wells I)*, 451 N.W.2d 402, 402 (S.D. 1990). Once Dolly left the reservation, William attempted to initiate a divorce proceeding in Crow Creek's tribal court but failed to personally serve Dolly, as tribal law required. *Id.* A few months later, Dolly initiated a divorce against William in Pennington County. *Id.* at 403. In response, William sent Dolly's attorney a summons and complaint and an admission of service which she refused to sign. *Id.* The tribal court, however, accepted this as valid service of process and granted William a default decree of divorce and custody of

their children. *Id.* Dolly had William served with her state court pleadings on the reservation, but the circuit court found the service invalid and granted William's motion to dismiss the case for insufficient service of process. *Id.*

[¶21.]     Dolly initiated new divorce proceedings against William in Pennington County. *Id.* William again moved to dismiss the case, arguing that South Dakota lacked subject matter jurisdiction. *Id.* The circuit court denied William's motion, determining that it shared concurrent subject matter jurisdiction over the divorce proceedings. *Id.* The court determined that it would not recognize the tribal court's divorce as a matter of comity because it failed to comply with the requirements of SDCL 1-1-25. *Id.* at 403–04. On intermediate appeal to this Court, we affirmed, holding "the tribal court divorce decree did not warrant recognition through principles of comity, and the circuit court had subject-matter jurisdiction of the divorce proceedings." *Wells II*, 2005 S.D. 67, ¶ 7, 698 N.W.2d at 506–07.

[¶22.]     Thereafter, the circuit court granted Dolly and William a divorce, awarded Dolly custody of the children, and ordered William to pay $650 a month in child support. *Id.*, 698 N.W.2d at 507. William filed a notice of appeal asserting that the circuit court's order was invalid for lack of personal and subject matter jurisdiction. *Id.* ¶ 8. The appeal was later dismissed after William failed to file and serve a brief or order transcripts. *Id.*

[¶23.]     Twelve years later, in *Wells II*, the Office of Child Support Enforcement initiated enforcement proceedings against William, seeking past due child support. *Id.* ¶ 9. William moved to vacate the judgment originally ordering the child support payments, arguing that the order was void due to lack of personal

and subject matter jurisdiction. *Id.* The circuit court in *Wells II* held that res judicata precluded William's motion to vacate. *Id.* ¶ 10. William appealed, and this Court affirmed, holding that res judicata precludes South Dakota courts from "reexamining asserted jurisdictional defects when the matter" was fully and fairly litigated in an earlier *circuit court* proceeding. *Id.* ¶¶ 15–22, 698 N.W.2d at 508–11. Aside from an attack via direct appeal, a circuit court's determination of jurisdiction after full and fair litigation is res judicata as to all other proceedings. *See id.* ¶ 17, 698 N.W.2d at 509. Thus, *Wells II* supports the traditional view that res judicata precludes a subsequent circuit court of the *same sovereign* from inquiring into the first circuit court's decision regarding jurisdiction when the issue of jurisdiction had been fully and fairly litigated in the first instance, and not, as Terri contends, the circuit court's ability to inquire into the validity of the tribal court's jurisdiction here. *See Id.* ¶ 22, 698 N.W.2d at 511.

[¶24.] In regard to *J.D.M.C.*, Terri's argument takes our holding out of context. In *J.D.M.C.*, Mother, an enrolled member of SWO, and Father, a non-Indian, shared custody of two daughters, both enrolled SWO members. 2007 S.D. 97, ¶ 2, 739 N.W.2d at 799. After the parties were divorced in Roberts County, one of their daughters died while in Father's custody. *Id.* ¶¶ 2–3. Mother filed an abuse and neglect petition in tribal court to remove J.D.M.C., the surviving daughter, from Father's custody. *Id.* ¶ 3. Despite Father's contest to jurisdiction, the tribal court found J.D.M.C. to be a ward of the tribal court, determined that it had jurisdiction, and entered an emergency custody order. *Id.* ¶ 4, 739 N.W.2d at 800. SWO subsequently sought enforcement of the order in circuit court, and Father filed

a motion for a comity hearing to contest the order's validity. *Id.* ¶ 5. The circuit court adopted the tribal court's order after determining that it was subject to full faith and credit under the Indian Child Welfare Act (ICWA). *Id.*

[¶25.] On appeal, this Court stated, "While Indian tribes are not technically 'states' to which the United States Constitution's full faith and credit clause would apply, *under ICWA*, a judgment entered in the SWO tribal court must be given full faith and credit[.]" *Id.* ¶ 38, 739 N.W.2d at 808 (emphasis added) (citing 25 U.S.C. § 1911(d), the Indian Child Welfare Act).[8] We also stated, in accordance with *Durfee* and *Baldwin v. Iowa State Traveling Men's Association*, 283 U.S. 522, 51 S. Ct. 517, 75 L. Ed. 1244 (1931), that "a judgment is entitled to full faith and credit— even as to questions of jurisdiction[.]" *Id.* (quoting *Durfee*, 375 U.S. at 111, 84 S. Ct. at 245). Nonetheless, *J.D.M.C.* does not stand for the proposition that all tribal court judgments are entitled to full faith and credit; rather, it merely restates the requirements of ICWA, *see* 25 U.S.C. § 1911(d), which under the supremacy clause displaces our usual directive to apply the principles of comity before recognizing a tribal court's judicial acts. *See* U.S. Const. art. VI, cl. 2 ("[T]he Laws of the United States . . . shall be the supreme Law of the Land; and the judges in every State shall be bound thereby, any . . . Laws of any State to the Contrary notwithstanding."); *see*

---

8.      25 U.S.C. § 1911(d) provides:

> The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity.

*generally In re Estate of Flaws*, 2016 S.D. 61, ¶ 18, 885 N.W.2d 580, 584

(recognizing that federal preemption occurs only when "Congress . . . expresses a

clear intent to pre-empt state law," . . . or where the state law obstructs the

accomplishment of federal objectives).[9]

[¶26.]        Based upon the clear legislative expression of comity in SDCL 1-1-25

and because none of the authorities Terri relies on support the application of res

judicata or full faith and credit to the tribal court's order, as a matter of common

law, we hold that the circuit court's extension of full faith and credit to a tribal court

order in this context was erroneous.  We, therefore, also hold that Leslie is not

precluded from challenging the tribal court's order granting Terri's motion to

dismiss for lack of jurisdiction.

---

9.        Terri also relies on *Durfee v. Duke*, 375 U.S. 106, 84 S. Ct. 242, 11 L. Ed. 2d
          186 (1963) and *Baldwin v. Iowa State Traveling Men's Association*, 283 U.S.
          522, 51 S. Ct. 517, 75 L. Ed. 1244 (1931), yet these cases are distinguishable.
          In *Durfee*, the United States Supreme Court merely recognized that the
          question of jurisdiction, once it has been fully litigated, is precluded from
          relitigation and is res judicata, via the full faith and credit clause, to the
          same degree as any other valid final judgment.  375 U.S. at 111, 84 S. Ct. at
          245.  In reaching its decision, the Supreme Court relied on *Baldwin*, which
          the Court found to have "unambiguously established" the idea that full faith
          and credit requires a jurisdictional determination from state or federal court
          to be final and free from review by later state and federal courts.  *Id.* at 111–
          12, 84 S. Ct. at 245.  But neither case directly applies to Leslie's appeal.
          Each case dealt with sovereigns subject to the full faith and credit clause,
          which, as stated earlier, incorporated "local doctrines of res judicata."  *Id.* at
          109, 84 S. Ct. at 244.  Because the full faith and credit clause does not apply
          between states and Indian Nations, unless otherwise prescribed by federal
          law, *Durfee* and *Baldwin* do not supplant the legislative mandate imposed
          under SDCL 1-1-25.

> **2.      Whether the circuit court erred by failing to determine if the tribal court order was entitled to comity under SDCL 1-1-25.**

> *a.      the elements of the comity analysis*

[¶27.]      Before any court may adjudicate a matter, it must have subject matter and personal jurisdiction.  A court has subject matter jurisdiction if it has authority to hear and adjudicate the general class of subject matter to which the case belongs. *Red Fox*, 494 N.W.2d at 643.  When two sovereigns have jurisdiction over the same subject matter, they are said to have concurrent subject matter jurisdiction.  *Harris v. Young*, 473 N.W.2d 141, 145–46 (S.D. 1991).  In such instances, we have stated that the case may be adjudicated by whichever sovereign first obtains valid personal jurisdiction. *Id.* at 145.  Therefore, in simultaneous parallel proceedings, the second tribunal must determine, first, whether concurrent jurisdiction exists, and if it does, it must also inquire into the validity of the first tribunal's exercise of personal jurisdiction.  Because the first tribunal is unable to issue a valid, binding judgment without personal jurisdiction, the second tribunal has the right to question the truth and existence of a fact, like personal jurisdiction, upon which the first tribunal's judicial authority depends. *See Wells I*, 451 N.W.2d at 404 (citing *Williams v. North Carolina*, 325 U.S. 226, 229, 65 S. Ct. 1092, 1095, 89 L. Ed. 1577 (1945)).[10]

---

10.      "[B]efore a court is bound by the judgment rendered in another [sovereign], it may inquire into the jurisdictional basis of the foreign court's decree." *Wells v. Wells (Wells I)*, 451 N.W.2d 402, 404 (S.D. 1990) (quoting *Underwriters Nat'l Assurance Co. v. North Carolina Life and Accident and Health Ins.*

(continued . . .)

[¶28.] However, the nature of this inquiry changes when the first tribunal is a tribal court that has issued an order or judgment. In such instances, the tribal court's judicial acts will be given recognition and preclusive effect only if the tribal court's order or judgment satisfies the requirements of SDCL 1-1-25 to wit:

> No order or judgment of a tribal court in the state of South Dakota may be recognized as a matter of comity . . . except under the following terms and conditions: (1) Before a state court may consider recognizing a tribal court order or judgment the party seeking recognition shall establish by clear and convincing evidence that:
>
> a) The tribal court had jurisdiction over both the subject matter and the parties;
>
> b) The order or judgment was not fraudulently obtained;
>
> c) The order or judgment was obtained by a process that assures the requisites of an impartial administration of justice including but not limited to due notice and a hearing;
>
> d) The order or judgment complies with the laws, ordinances and regulations of the jurisdiction from which it was obtained; and
>
> e) The order or judgment does not contravene the public policy of the State of South Dakota.

[¶29.] Importantly, SDCL 1-1-25 specifically provides that "[n]o order or judgment of a tribal court in the State of South Dakota may be recognized as a matter of comity in the state courts of South Dakota [unless] . . . [t]he tribal court had jurisdiction over *both the subject matter and parties*." (Emphasis added.) This statutory limitation on comity explicitly requires courts to analyze subject matter

_____

(. . . continued)

    *Guar. Ass'n*, 455 U.S. 691, 705, 102 S. Ct. 1357, 1366, 71 L. Ed. 2d 558 (1982)).

and personal jurisdiction as a predicate to any grant of comity. At the same time, tribal jurisdiction has also been limited as a matter of federal law by Supreme Court precedent.

[¶30.] Most notably, in *Montana v. United States*, the Supreme Court held that a tribe could exercise such jurisdiction over non-members on their reservation "who enter consensual relationships with the tribe or its members" or whose conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." 450 U.S. 544, 565–66, 101 S. Ct. 1245, 1258–59, 67 L. Ed. 2d 493 (1981). These two exceptions are a necessary predicate to any exercise of tribal jurisdiction. Thus, a tribal court judgment involving non-members is only entitled to comity pursuant to SDCL 1-1-25 if the tribal court has personal and subject matter jurisdiction and one of the *Montana* exceptions applies.[11] Absent any one of these elements, comity is inappropriate because the tribal court lacks jurisdiction. Here, the tribal court order fails under all three.

---

11. Instead of applying the statutory jurisdictional criteria of personal and subject matter jurisdiction, the special concurrence focuses exclusively and narrowly on the *Montana* exceptions. *Montana v. United States*, 450 U.S. 544, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981). It is helpful to remember that comity is a creature of state, not federal, law. Where the Legislature has provided us with specific jurisdictional inquiries to apply—here subject matter and personal jurisdiction—we are bound to follow this statutory command. Indeed, even if a *Montana* exception applies, comity is only appropriate if the tribal court has subject matter and personal jurisdiction. Thus, although a tribal court cannot exercise jurisdiction outside the limits set by *Montana*, personal and subject matter jurisdiction are necessary jurisdictional components of the SDCL 1-1-25 comity analysis.

### b. the tribal court order is not entitled to comity

[¶31.] Because "[c]ircuit courts may not refuse to hear divorce proceedings properly commenced first in South Dakota, in favor of another [sovereign's] jurisdiction," *Langdeau v. Langdeau*, 2008 S.D. 44, ¶ 18, 751 N.W.2d 722, 729, the circuit court could not have dismissed Leslie's divorce action unless it recognized the tribal court's order as a matter of comity under SDCL 1-1-25. As previously noted, the circuit court failed to conduct the required comity analysis. Even so, we decline to remand this issue for further proceedings because it is apparent from the record that Terri cannot establish by clear and convincing evidence that the tribal court order was entitled to comity pursuant to SDCL 1-1-25.

### i. subject matter jurisdiction

[¶32.] Subject matter jurisdiction pertains to a tribunal's power to hear and adjudicate a certain class of cases. *Red Fox*, 494 N.W.2d at 643. A court's jurisdiction over a particular class of subject matter is conferred by the sovereign's laws. *Id.* A tribal court's subject matter jurisdiction is conferred by the tribe's constitution, tribal code, treaties, or decisional law. *Id.* (citing Cohen, *Federal Indian law*, p. 428 (1958)); *see also* Pommersheim, 31 Ariz. L. Rev. at 337. Likewise, a tribal court's "jurisdiction may also be limited by express restrictions found within tribal law itself or even, occasionally, by the absence of positive tribal law on point." *Id.* Even when a tribal court has general subject matter jurisdiction, "there may be self-imposed tribal limitations regarding available remedies." *Id.* at 338.

[¶33.] SWO's tribal code confers to its court's civil jurisdiction over "divorces of the members of the Sisseton-Wahpeton Sioux Tribe and other Indian Tribes." SWO Code 34-03-01. As stated in Section 34-17-01, "The [SWO] shall have authority to grant divorces to members of the [SWO] or any other Indian tribe whether the marriage was consummated under marriage license issued by the Clerk of the [SWO], or under license issued by State or Tribal authority."

[¶34.] Leslie argues that the tribal code's plural form "members" indicates that the Tribe has expressly limited its jurisdiction to divorce actions between Indians who are members of an Indian tribe. When we know of no other authority on point, we interpret a tribe's code, when we are required to do so, by looking at the plain meaning of the words used and its surrounding provisions. *Wells I*, 451 N.W.2d at 404. The language in Section 34-17-01 giving authority to grant a divorce to "members of the [SWO] or any other Indian tribe" does appear to restrict the tribal court's jurisdiction to couples who are both Indians or members of a tribe. This limitation on tribal court subject matter jurisdiction is made even more clear from a review of the provisions surrounding Section 34-17-01.

[¶35.] Chapter 34 contains express restrictions on SWO's judicial jurisdiction to grant a divorce in a marriage between an enrolled member and a non-Indian. Section 34-17-02 explicitly lays out the two ways for a marriage to be dissolved: "(1) By the death of one of the parties; or (2) By the judgment of the Sisseton-Wahpeton Sioux Tribal Courts decreeing a divorce of the parties *where the parties are members of the Sisseton-Wahpeton Sioux Tribe or any Indian Tribe.*" (Emphasis added.) The use of parties in conjunction with members further supports the reading that each

spouse must be a member of an Indian tribe. Additionally, in Sections 34-23-04 and 34-23-05, the code articulates the procedure to be followed when service upon the defendant cannot be completed. As the provisions below illustrate, the tribal code does not seem to entertain the possibility of a non-Indian defendant:

> In case service cannot be made upon the Reservation, the summons, together with a copy of the complaint shall be forwarded *to the law and order department of the Reservation where the defendant is enrolled*, or the law and order department of the jurisdiction of the defendant's last known address and there served.

SWO Code 34-23-04 (emphasis added), and

> *If service cannot be made personally either on the Lake Traverse Reservation or on the Reservation where the defendant is enrolled*, a return shall be made to the Clerk showing said facts; thereupon the clerk shall cause to be posted at the Agency and courthouse *of both Reservations* a copy of the summons and complaint; and also mail a copy of the summons and complaint to the last known post office address of the defendant and service shall be deemed complete[.]

SWO Code 34-23-05 (emphasis added).

[¶36.] A definition of "members" that included non-Indians would render Sections 34-17-02, 34-23-04, and 34-23-05 superfluous. Thus, SWO's subject matter jurisdiction over divorces appears to be limited to marriages between "*members of the Sisseton-Wahpeton Sioux Tribe or any Indian Tribe*," thus excluding marriages involving a non-Indian. Because SWO lacks subject matter jurisdiction, the tribal court order is not enforceable under SDCL 1-1-25. While the absence of subject matter jurisdiction is sufficient to conclude as a matter of law that the tribal court's order is not enforceable as a matter of statutory comity, the record also demonstrates, as discussed below, that the tribal court also lacked personal

jurisdiction, as required for a South Dakota court to enforce the order under SDCL 1-1-25.

*ii.    personal jurisdiction*

[¶37.]    "Tribal judicial jurisdiction also depends on whether the tribal court has personal jurisdiction over the defendant." *Red Fox*, 494 N.W.2d at 644.  When a tribe's code contains a long-arm statute for personal jurisdiction over non-domiciliaries, we analyze personal jurisdiction under that provision; otherwise, we "apply a traditional federal long-arm jurisdiction analysis." *Red Fox*, 494 N.W.2d at 645.  Because SWO's code contains a long-arm statute, that is where we begin.  *See generally id.*  For a court to exercise personal jurisdiction over a non-domiciliary, "two conditions must be satisfied." *Davis v. Otten*, 2022 S.D. 39, ¶ 12, 978 N.W.2d 358, 363.  "First, the forum['s] long-arm statute must authorize the exercise of such personal jurisdiction." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009); *see Davis*, 2022 S.D. 39, ¶ 12, 978 N.W.2d at 363.  "Second, if that authorization exists, the Due Process Clause of the Fourteenth Amendment requires that the defendant have sufficient minimum contacts with the forum[.]" *CFA Inst.*, 551 F.3d at 292.

[¶38.]    SWO's long-arm statute extends personal jurisdiction to four categories of actions by a non-domiciliary:

> As to the cause of action arising from any of the acts enumerated in this section, a Court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: 1. Transacts any business within the Lake Traverse Indian Reservation; or 2. Commits a tortious act within the Lake Traverse Indian Reservation, except as to cause of action for defamation of character arising from the act; or 3. Commits a tortious act within the Lake Traverse Indian

> Reservation causing injury to person or property within the Lake Traverse Indian Reservation, except as to cause of action for defamation of character arising from the act, if he: (a) Regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumes or services rendered, in the Lake Traverse Indian Reservation: or (b) Expects or should reasonably expect the act to have consequences in the Lake Traverse Indian Reservation and derives substantial revenue from interstate or international commerce; 4. Own, uses or possesses any real property situated within the Lake Traverse Indian Reservation.

SWO Code 45-01-02.

[¶39.] Here, the tribal court found that the cause of action is a "domestic relations case." The dispute does not fall within the enumerated categorizations of SWO's long-arm statute. The divorce action did not arise from the transaction of business in Indian country, a tortious act committed on or causing injury within Indian country, or the use or ownership of real property in Indian country. Therefore, even if we construed the Tribe's code broadly, *see generally Davis*, 2022 S.D. 39, ¶ 13, 978 N.W.2d at 364, Leslie is not subject to personal jurisdiction under the long-arm statute.

[¶40.] Even if we assume that Leslie is subject to SWO's long-arm statute, Leslie's contacts with SWO are not sufficient to satisfy due process. A tribal court's exercise of personal jurisdiction over a party must comport with due process. *Application of DeFender*, 435 N.W.2d 717, 720 (S.D. 1989); *see* 25 U.S.C. § 1302(8). Thus, personal jurisdiction depends on reasonable notice and "minimum contacts." *Red Fox*, 494 N.W.2d at 645 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

[¶41.] Leslie argues that Terri's service of process did not comply with SWO's tribal code; however, he did receive a copy of the summons and complaint that Terri filed with the tribal court. For purposes of our analysis, we will assume Leslie received reasonable notice of Terri's tribal court proceedings. Next, we must determine whether Leslie had sufficient minimum contacts with SWO to ensure the Tribe's exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *J.D.M.C.*, 2007 S.D. 97, ¶ 44, 739 N.W.2d at 811. To do so, we apply a three-step analysis to examine whether the assertion of personal jurisdiction satisfies due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state, thus invoking the benefits and protections of its laws. Second, the cause of action must arise from defendant's activities directed at the forum state. Finally, the acts of defendant must have substantial connection with the forum state to make the exercise of jurisdiction over defendant a reasonable one.

*Id.* ¶ 45, 739 N.W.2d at 811 (quoting *Daktronics, Inc. v. LBW Tech Co., Inc.*, 2007 S.D. 80, ¶ 6, 737 N.W.2d 413, 417).

[¶42.] Here, the unchallenged facts before the circuit court established that Leslie is a non-Indian who, for the duration of his marriage, has never resided in Indian country. Although he worked for Dakota Sioux Fuel & Propane, Inc., which held a tribal charter and conducted business with SWO, the corporation was dissolved in July 2004—twenty years ago. Since that time, Leslie's only connection to SWO is his wife's and adoptive son's status as enrolled tribal members.[12]

---

12. To the extent it has any application to our determination that the tribal court lacked personal jurisdiction over Leslie, we note that he challenges the circuit

(continued . . .)

Nonetheless, being married to a tribal member does not by itself establish minimum contacts sufficient for personal jurisdiction to comport with due process. *See Application of DeFender*, 435 N.W.2d at 721. Based on our review of the record, there is no evidence to establish that Leslie purposefully availed himself of the privilege of acting in the forum, or that Leslie's connection with SWO twenty years ago was sufficient for the exercise of personal jurisdiction to be fair and reasonable. Thus, we conclude that Terri has failed to present clear and convincing evidence showing that SWO's exercise of personal jurisdiction over Leslie was proper.

*iii.     Montana.*

[¶43.]     In *Montana v. United States*, the Supreme Court limited the jurisdiction of Indian Tribes over nonmembers:

> Indian tribes retain inherent sovereign power to exercise some
> forms of civil jurisdiction over non-Indians on their reservations,
> even on non-Indian fee lands. A tribe may regulate, through
> taxation, licensing, or other means, the activities of nonmembers
> who enter consensual relationships with the tribe or its
> members, through commercial dealing, contracts, leases, or
> other arrangements. A tribe may also retain inherent power to
> exercise civil authority over the conduct of non-Indians on fee
> lands within its reservation when that conduct threatens or has

_____

(. . . continued)

court's finding that "Leslie and Terri owned and operated Dakota Sioux Fuel & Propane in Sisseton, for many years which was a tribally chartered business, and both have had dealings with the [SWO] and its court's system." Leslie correctly states that the only reference in the record supporting this finding of fact are the unsworn statements of Terri's attorney during the motions hearing. Because there was no evidence presented to the circuit court supporting this finding, it was clearly erroneous for the court to make this finding. Also, as to Leslie's challenge to the circuit court's finding that "Leslie appeared personally along with legal counsel at the tribal court", this finding is directly contradicted by the record and is therefore clearly erroneous. The tribal court's order states, "The legal representative of both parties were present, but the Plaintiff and Defendant did not attend."

> some direct effect on the political integrity, the economic
> security, or the health or welfare of the tribe.

450 U.S. at 565–66, 101 S. Ct. at 1258 (citations and footnote omitted). Recently, the Supreme Court has described *Montana* as establishing a "general jurisdiction-limiting principle." *United States v. Cooley*, 593 U.S. 345, 351, 141 S. Ct. 1638, 1644, 210 L. Ed. 2d 1 (2021). In other words, the *Montana* exceptions are overarching jurisdictional considerations, rather than unique formulations of subject matter or personal jurisdiction. Thus, for purposes of the comity analysis, *Montana* operates as a federal backstop, limiting tribal court jurisdiction to the exceptions above, even if the statutory requirements of personal and subject matter jurisdiction are satisfied.

[¶44.] Here, as the concurrence notes, Leslie is a non-Indian and his marriage to Terri is insufficient to trigger either of the *Montana* exceptions. *See J.D.M.C.*, 2007 S.D. 97, ¶ 41, 739 N.W.2d at 809 (holding that "marrying a tribal member, allowing children to be enrolled members of the tribe and receiving tribal services do not qualify under the consensual relationship exception in *Montana*"). Because we conclude that the tribal court order is not enforceable, we need not address Leslie's argument that the tribal court's order did not comply with tribal law because Terri's service of process did not adhere to the procedures articulated in SWO's tribal code or her arguments that the circuit court's findings were clearly erroneous in several respects.

## Conclusion

[¶45.] The circuit court's order recognizing as valid the tribal court's jurisdiction and service of process under the principles of full faith and credit was a

legal error. Because there is no applicable federal law specifically requiring the application of full faith and credit, the circuit court should have applied SDCL 1-1-25. However, even if the circuit court had applied SDCL 1-1-25, the record does not contain sufficient evidence to recognize the tribal court's order under principles of comity. Terri failed to present any evidence to the circuit court, let alone clear and convincing evidence, to satisfy the jurisdictional requirement of SDCL 1-1-25. Accordingly, we reverse the circuit court's order granting full faith and credit to the tribal court order.

[¶46.] In rendering this opinion, we note that our decision does not, nor could it, determine or seek to limit the tribal court's inherent judicial authority, nor do we sit as an appellate tribal court. We accord the utmost respect to the nine sovereign tribal courts operating within this State's territorial boundaries. However, our decision must apply the standards our Legislature requires us to follow and controlling federal precedent in determining whether a tribal court's judicial acts are entitled to recognition by the courts of this State.

[¶47.] JENSEN, Chief Justice, concurs.

[¶48.] SALTER and DEVANEY, Justices, concur specially and dissent in part.

[¶49.] MYREN, Justice, concurs in part and dissents in part.

SALTER, Justice (concurring specially and dissenting in part).

[¶50.] I agree that the circuit court erred by failing to conduct a comity inquiry under SDCL 1-1-25. This, in turn, led to the court recognizing tribal court jurisdiction when it is apparent that none existed for this divorce case involving a

non-Indian. In my view, this principal question is not a close one, and I write specially to suggest that our cases may not adequately account for the United States Supreme Court's decisions involving the assertion of tribal jurisdiction over non-Indians.

[¶51.] Before a South Dakota court may recognize a tribal court order under principles of comity, the party seeking recognition must establish, among other things, that "[t]he tribal court had jurisdiction over both the subject matter and the parties[.]" SDCL 1-1-25(1)(a). Where the tribal court order purports to assert jurisdiction over a non-Indian, this showing presents a formidable challenge, even in cases—unlike this one—where the non-Indian lives within a reservation.

[¶52.] In *Montana v. United States*, the Supreme Court held that the Crow Tribe of Montana could not regulate hunting and fishing by non-Indians on land within its reservation that the Crow Tribe "no longer owned[.]" 450 U.S. 544, 564, 101 S. Ct. 1245, 1258, 67 L. Ed. 2d 493 (1981). The Court relied upon broad "general principles" from *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S. Ct. 1011, 55 L. Ed. 2d 209 (1978), which categorically prohibited tribes from asserting criminal jurisdiction over non-Indians on the basis of its inherent authority. *Id.* at 565 (discussing *Oliphant*). In the context of civil jurisdiction, the *Montana* Court concluded that the inherent power of Indian tribes, generally, did "not extend to the activities of nonmembers of the tribe[,]" but the rule allowed for two exceptions:

> Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers

who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Id.* at 565–66 (citations and footnote omitted).

[¶53.] In our 1993 *Red Fox v. Hettich* decision, a plurality of the Court viewed *Montana* somewhat narrowly as an expression of "tribal legislative jurisdiction." 494 N.W.2d 638, 646 (S.D. 1993). To this jurisdictional subpart, the *Red Fox* plurality added a longer order of operations, including an inquiry into "tribal judicial jurisdiction," which, in turn, was a function of territorial jurisdiction, subject-matter jurisdiction, and personal jurisdiction. *Id.* at 642–44. As to the last of these, we engaged in a "traditional long-arm analysis," holding that "before the tribal court can assert jurisdiction over a non-Indian, he must receive notice and have 'minimum contacts' with the tribe." *Id.* at 645 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).[13]

[¶54.] But in two decisions after *Red Fox*, the Supreme Court left little doubt that *Montana* provided a more complete rule concerning a tribe's authority to assert civil jurisdiction over non-Indians.

> *Montana* thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions . . . .

---

13. The non-Indian defendant in *Red Fox v. Hettich* lived within the exterior boundaries of the Standing Rock Indian Reservation on fee land. 494 N.W.2d 638 (S.D. 1993).

*Strate v. A-1 Contractors*, 520 U.S. 438, 446, 117 S. Ct. 1404, 1409–10, 137 L. Ed. 2d 661 (1997); *see also South Dakota v. Bourland*, 508 U.S. 679, 695 n.15, 113 S. Ct. 2309, 2320 n.15, 124 L. Ed. 2d 606 (1993) (quoting *Montana*, 450 U.S. at 565, 101 S. Ct. at 1258) (noting the "reality that after *Montana*, tribal sovereignty over nonmembers 'cannot survive without express congressional delegation' . . . and is therefore not inherent").

[¶55.]	Similarly, in *Plains Commerce Bank v. Long Family Land & Cattle Co.*, the Supreme Court held that "[g]iven *Montana's* general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe, efforts by a tribe to regulate nonmembers, especially on non-Indian fee land, are presumptively invalid." 554 U.S. 316, 330, 128 S. Ct. 2709, 2720, 171 L. Ed. 2d 457 (2008) (cleaned up). The Court described the *Montana* exceptions to this general rule—consensual commercial relationships and threats to the tribe—as "limited." *Id.* (citation omitted).

[¶56.]	But in our *J.D.M.C.* decision, which came after *Strate* but before *Plains Commerce*, we continued to view *Montana's* general rule with what may have been unjustified precision. As the *Red Fox* plurality had fourteen years earlier, we relegated *Montana* to a test for "legislative jurisdiction" and analyzed other dissected jurisdictional concepts,[14] including personal jurisdiction under a

---

14.	It is difficult to perceive any meaningful distinction between a tribe's legislative jurisdiction and its judicial or adjudicative jurisdiction in a case like this, given the Supreme Court's holding in *Strate v. A-1 Contractors*: "As to nonmembers, we hold, a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction. Absent congressional direction enlarging tribal-court jurisdiction, we adhere to that understanding." 520 U.S. 438, 453, 117 S. Ct.

(continued . . .)

traditional "minimum contacts" analysis. *In re J.D.M.C.*, 2007 S.D. 97, ¶¶ 41, 43–47, 739 N.W.2d 796, 809–12. But this personal jurisdiction inquiry seems particularly dubious.

[¶57.] The non-Indian father named in an SWO tribal court abuse and neglect order in *J.D.M.C.* did *not* reside within a reservation and by undertaking a minimum contacts inquiry, we seemed to suggest that he could conceivably be subject to the SWO's jurisdiction.[15] There is no authoritative support for this sort of expansion of tribal jurisdiction over non-Indians. The *Montana* general rule and exceptions are applicable only for assertions of tribal jurisdiction over non-Indians living or acting *within* a reservation. And, in any event, we specifically held in *J.D.M.C.* that "marrying a tribal member, allowing children to be enrolled members of the tribe and receiving tribal services do not qualify under the consensual

---

(. . . continued)
1404, 1413, 137 L. Ed. 2d 661 (1997). In other words, a tribe cannot, without express congressional authority, enact laws that exceed the tribe's inherent power to adjudicate.

15. The father in *In re J.D.M.C.*, 2007 S.D. 97, 739 N.W.2d 796, lived in Sisseton on fee land, but unlike the fee land status of the non-Indian defendant in *Red Fox*, the Sisseton fee land was not Indian country because it did not lie within the exterior boundaries of a reservation as a result of the Supreme Court's *DeCoteau* decision. *DeCoteau v. District County Court*, 420 U.S. 425, 95 S. Ct. 1082, 43 L. Ed. 2d 300 (1975). *See* 18 U.S.C. 1151(a) (defining "Indian country" as "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent"). However, Indian country status has generally not been significant for a determination of civil jurisdiction under the *Montana* line of cases which have instead focused on limits of Indian reservations and the fee status of land within them. *See Garcia v. Gutierrez*, 217 P.3d 591, 597 (N.M. 2009) (observing that the "*Montana* cases largely fail to address" the significance of Indian country under 18 U.S.C. 1151).

relationship exception in *Montana*." *Id.* ¶ 41 (citing *Atkinson Trading Co., Inc. v. Shirley*, 532 U.S. 645, 655, 121 S. Ct. 1825, 1833, 149 L. Ed. 2d 889 (2001)).

[¶58.] In both *Red Fox* and *J.D.M.C.*, we appeared uneasy as we acted on our impulse to label *Montana's* holding as a subject matter or personal jurisdiction concept. *See Red Fox*, 494 N.W.2d at 643 (asking if *Montana* is "a facet of subject matter jurisdiction? Of personal jurisdiction? It is unclear. It appears from our reading of the cases, that it is neither and both."); *J.D.M.C.*, 2007 S.D. 97, ¶ 41, 739 N.W.2d at 809 ("*Montana* is really a test for subject matter jurisdiction[.]"). Though I can appreciate such careful attention to detail, distinguishing between the two jurisdictional types does not make a tribal court's assertion of jurisdiction over a non-Indian any more or less permissible.

[¶59.] The non-Indian party in *Red Fox* lived on a reservation, and our decision should have reflected a more accurate view of *Montana's* holding. In *J.D.M.C.*, the non-Indian party did not live on a reservation, and there was no exceptional basis for the assertion of tribal jurisdiction. Our suggestion that a tribal court could somehow acquire jurisdiction over a non-Indian in these circumstances using conventional jurisdictional concepts was, in my view, incorrect.

[¶60.] As it relates to the comity issue here, there is a straightforward path to resolution. Comity under SDCL 1-1-25 depends upon the tribal court having jurisdiction over Leslie. It did not. Leslie is a non-Indian and did not live on a reservation, and there is no claim that a *Montana* exception applies. The tribal

court's orders relating to Leslie are not, therefore, entitled to comity.[16]  It is unnecessary to further examine, as the Court does, the discrete topics of the tribal court's subject-matter jurisdiction or consider the possibility that Leslie could be haled into court under a traditional due process assessment of his contacts with the tribal forum.

[¶61.]		Finally, I would not engage in the res judicata analysis the Court undertakes.  Terri's res judicata theory is simply an extension of what she, at times, mischaracterizes as a full faith and credit argument, which the Court correctly reclassifies as a comity issue.  This comity issue concerns the circuit court's recognition of the tribal court's *initial* assertion of jurisdiction, not the *final* tribal court judgment of divorce.  *See Mack v. Trautner*, 2009 S.D. 13, ¶ 12, 763 N.W.2d 121, 124 (quoting *Black Hills Jewelry Mfg. Co. v. Felco Jewel Indus., Inc.*, 336 N.W.2d 153, 157 (S.D. 1983)) ("[F]or res judicata to bar a subsequent claim, 'the earlier court must have had jurisdiction and its decision must be final and unreversed.'").

[¶62.]		Consequently, Terri's claim that Leslie's effort on appeal constitutes an impermissible collateral attack on a final tribal court divorce begs the fundamental predicate question of comity (and jurisdiction) which lies at the heart of the appeal. If there was no basis for recognizing the tribal order asserting jurisdiction in the

---

16.	Frankly, even if Leslie did live on fee land within a reservation, there appears to be no basis for tribal jurisdiction.  His marriage to Terri is not the sort of consensual relationship envisioned by *Montana*, as we noted in *J.D.M.C.*, and there is no claim that Leslie's "conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe."  *Montana*, 450 U.S. at 566, 101 S. Ct. at 1258.

first place, then neither is there a basis for recognizing the subsequent tribal divorce judgment purporting to divide the marital estate.[17]

[¶63.] DEVANEY, Justice, joins this writing.

MYREN, Justice (concurring in part and dissenting in part).

[¶64.] I agree with Justice Kern's analysis, which concludes that the full faith and credit clause does not apply to Indian tribes in the same way it applies to states. I also agree that South Dakota courts may only give effect to a tribal court order as a matter of comity under circumstances consistent with SDCL 1-1-25.

[¶65.] Terri filed a motion to dismiss based entirely on the theory that the tribal court's order was "entitled to the same full faith and credit as any other out-of-state judicial proceeding." Leslie filed a memorandum in opposition to the motion to dismiss, contending the tribal court order "cannot be recognized pursuant to SDCL 1-1-25(1)(a), and the state court case should be allowed to proceed." An affidavit from Leslie was attached to the memorandum in opposition to the motion to dismiss. The circuit court conducted a hearing regarding Terri's motion to dismiss. Terri's counsel informed the court that "[m]y client, Terri Torgerson, is in the courtroom today if the Court would be inclined to hear testimony from her."

---

17. Terri argues that the tribal court had jurisdiction over the divorce case as a component of its sovereignty and its "rightful and legitimate concern in the marital status of its tribal members[.]" She may well be correct if she was arguing only that the tribal court has the authority to determine the marital status of SWO members, but that narrow issue is not presented. Instead, Terri's claim is broader and does not differentiate between this determination of status and the other divisible legal issues that often accompany divorces, such as the equitable division of the marital estate. *See Kelly v. Kelly*, 759 N.W.2d 721, 723 (N.D. 2009) (describing the "divisible divorce" doctrine which involves (1) a determination of marital status and (2) "the adjudication of the incidences of the marriage").

Leslie again requested a comity ruling by drawing the circuit court's attention to SDCL 1-1-25. His counsel specifically argued, "It's up to the party wanting that order to be recognized to prove it by clear and convincing evidence." Neither party presented any testimony or other evidence at the hearing. Neither party mentioned Leslie's affidavit attached to the memorandum in opposition or asked the circuit court to receive it into evidence. The circuit court did not discuss SDCL 1-1-25 or make any ruling related to comity. Instead, the circuit court granted the motion to dismiss and based its decision entirely on the application of the full faith and credit clause. I agree the circuit court erred in its application of the full faith and credit clause. However, there is no comity ruling for this Court to review for error, and I would remand with direction that the circuit court address the unresolved comity issue.

[¶66.] The opinions of Justices Kern and Salter provide learned and detailed explanations about how they perceive the United States Supreme Court's decision in *Montana* should affect the comity analysis. I announce no position on that issue because I do not believe that discussion is necessary for our resolution of this case. The circuit court issued no comity ruling, and we are not called upon to explain whether a circuit court's decision about comity was correct or incorrect. In this situation, any explanation of comity by the Court is dicta.